**UNITED STATES**

v.

**Sidney D. SIMON.**

**Crim. No. 80–381–1.**

United States District Court,
E. D. Pennsylvania.

March 30, 1981.

Gary S. Glazer, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert E. Madden, Sprague, Goldberg & Rubenstone, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

On December 10, 1980, a federal grand jury sitting in the Eastern District of Pennsylvania indicted defendant Sidney D. Simon, charging him with seventeen counts of mail fraud, 18 U.S.C. § 1341, and three counts of making false statements within the jurisdiction of a federal agency, 18 U.S.C. § 1001. According to the indictment, defendant Simon was at all relevant times the president, administrator and owner of the Garden Court Nursing Home, Inc. ("Garden Court"), a facility located in Doylestown, Pennsylvania and licensed under the Commonwealth of Pennsylvania Medicaid Plan, making it eligible to receive Medicaid.[1]

The indictment alleges that from October 1, 1976 to December, 1980, Mr. Simon "devised and intended to devise a scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses, representations and promises, from the United States of America, [H.H.S.][2], the Commonwealth of Pennsylvania, and D.P.W. [the Pennsylvania Department of Public Welfare], based upon representations that Garden Court had incurred expenses allowable under Medicaid for skilled nursing home services, when the defendant knew that these representations were falsely and fraudulently made for the purpose of inflating costs submitted for Medicaid reimbursement." (Count 1, ¶ 16) The scheme and artifice devised and employed by defendant Simon included, according to the indictment, causing Garden Court to pay for and report as expenses reimbursable by Medicaid such items as the marina services costs for defendant's yacht, the repair costs for a swimming pool located at his Pennsylvania residence, and various hotel and restaurant bills incurred by defendant on several continents.

Counts one through seventeen charge the defendant with mail fraud. Counts one,

---

1. Medicaid is a federal program authorized by Title XIX of the Health Insurance for the Aged Act, 42 U.S.C. § 1396 *et seq.* and administered by the Department of Health and Human Services ("H.H.S."). Under the Medicaid program, pursuant to plans submitted by the States and approved by H.H.S., monies are given by the federal government to the States to help pay for medical services to individuals who financially are unable to pay themselves.

2. Throughout the indictment, there are references to the Department of Health, Education and Welfare ("H.E.W."). This federal agency is now called the Department of Health and Human Services ("H.H.S.") and shall be so described in this memorandum.

two and three deal with three purportedly false and fraudulent Medicaid cost reports for Garden Court mailed or caused to be mailed by Mr. Simon to the Pennsylvania Department of Public Welfare ("D.P.W.") while counts four through seventeen concern unspecified mailings from the Commonwealth of Pennsylvania to Garden Court which the defendant "for the purpose of executing the scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses, representations and promises, did knowingly and wilfully cause to be delivered by mail." (Counts 4–17, ¶ 2). Counts eighteen, nineteen and twenty charge defendant Simon with violating 18 U.S.C. § 1001. Each of these counts concerns one of the three Medicaid reports described in the first three counts and purportedly submitted by the defendant to D.P.W. Regarding these reports, counts eighteen, nineteen and twenty each allege that "defendant Sidney D. Simon knowingly and wilfully did make and use and did cause to be made and used, a false writing and document, knowing said writing and document to contain false, fictitious and fraudulent statements and entries as to material matters within the jurisdiction of [H.H.S.], a department of the United States." (Counts 18–20, ¶ 2)

The defendant has filed four different motions to dismiss, each asserting a separate basis for dismissal of the indictment. For the reasons that follow, I will deny all of these motions.

### MOTION TO DISMISS THE INDICTMENT OR ALTERNATIVELY TO GRANT DEFENDANT A PRELIMINARY HEARING

In this motion and supporting memorandum, the defendant contends that his Fifth Amendment rights to due process and equal protection have been violated because the United States Attorney enjoys unbridled discretion in determining whether to initiate a prosecution either by the procedure of grand jury indictment followed by

arrest or by the procedure of arrest upon complaint followed by preliminary examination (hearing). It is Mr. Simon's contention that from a defense point of view the former procedure is inherently inferior to the latter as the preliminary hearing affords a defendant certain invaluable rights, such as the opportunity to confront and cross-examine hostile witnesses and to discover the prosecution's case. Because there are no objective standards, defendant argues, the government's determinations as to which procedure to elect are necessarily arbitrary, capricious and discriminatory. The sole legal authority cited by the defense in support of this proposition is an opinion written by the California Supreme Court, *Hawkins v. Superior Court of San Francisco*, 22 Cal.3d 584, 150 Cal.Rptr. 435, 586 P.2d 916 (1978). The *Hawkins* decision held that the dual system under California law for initiating felony prosecutions, either by grand jury indictment or by information after a preliminary hearing, violated the equal protection guarantees of the California state constitution.

Constructed as it is on the foundation of the *Hawkins* opinion, defendant's argument fails of its own weaknesses. That decision both is not legally binding on this court and is factually distinguishable as it concerns a system of initiating prosecutions different from the one at issue here.[3]

There are other reasons why defendant cannot prevail on this theory. First, the assertion that the federal government can choose to proceed by either indictment or arrest upon complaint is simply incorrect in a case such as this one which involves felony charges. Fed.R.Crim.P. 7(a) provides:

An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information.

3. In the California system, unlike the federal system, the prosecutor has absolute discretion to choose whether to proceed against a defendant by grand jury indictment or by filing an information followed by a preliminary hearing.

Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court.

Therefore, under the language of Rule 7(a) and of the Fifth Amendment,[4] absent a voluntary waiver, a defendant charged with a federal crime punishable by more than one year in prison must be prosecuted by indictment.

■ Moreover, under the federal system, even in the situation where the government has initiated proceedings against a person upon complaint, there is no absolute right to a preliminary examination. Rule 5(c) of the Federal Rules of Criminal Procedure provides that a person arrested upon complaint will not be given a preliminary examination if he is indicted before the date set for such hearing. The reason why the requirement of a preliminary examination is conditioned on whether there has been an indictment is that the purpose of such a hearing in the federal scheme is to give a person arrested upon complaint the opportunity to challenge the existence of probable cause and the right of the government to detain him or require bail. *See* Rules 5 and 5.1 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3060. Once a federal grand jury has indicted a defendant, probable cause is established, and the defendant no longer is entitled to a preliminary hearing. *See, e. g. Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977)

■ In addition, federal courts have determined that there is not a constitutional right to a preliminary hearing, *e. g., United States v. Farries*, 459 F.2d 1057, 1062 (3d Cir. 1972), and that denial of such a hearing does not violate due process when a person has been indicted by a grand jury, *e. g., Rivera v. Government of the Virgin Islands*, 375 F.2d 988, 989 (3d Cir. 1967).

Even assuming that a federal prosecutor enjoyed the unfettered discretion in determining whether to initiate prosecution by indictment or by complaint followed by preliminary examination as alleged by defendant, it is doubtful that Mr. Simon could challenge successfully his indictment on the basis that such discretion violated his due process and equal protection rights as guaranteed by the United States Constitution. In *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), a case involving a challenge to a prosecutor's discretion in choosing to proceed under one criminal statute where there is another applicable statute which involves a lesser penalty, the Supreme Court declined to find a violation of due process or equal protection guarantees. The holding of *Batchelder* suggests that while the exercise of discretion by prosecutors certainly is subject to constitutional constraints, the concern of the due process and equal protection clauses is whether enforcement of the criminal laws has been based "upon an unjustifiable standard such as race, religion or other arbitrary classification." *Id.* at 2204, n.9 (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).) In the instant case, there is no suggestion that the prosecution of Mr. Simon is the result of such an impermissible standard or classification.

Given the applicable federal rules of criminal procedure and the legal precedent discussed above, it is clear that defendant Simon is not entitled to dismissal because he did not receive a preliminary hearing nor is he entitled to such a hearing now at the post-indictment stage.

## MOTION TO DISMISS BECAUSE OF INADEQUATE AND MISLEADING GRAND JURY INSTRUCTIONS

■ The gravamen of this motion is that the inadequate nature of the charge and instructions given by the impaneling judge and by the prosecutors to the grand jury which indicted Sidney Simon requires the dismissal of the indictment. Defendant concedes, however, that these allegations

---

4. The relevant portion of the Fifth Amendment states:

[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless

on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger ...

are based on conjecture as he has not seen the grand jury transcripts, does not know what charge or instructions were given or even which judge impaneled the grand jury. Instead, defendant's claim is that the charge made by the impaneling judge was what he describes as the standard charge given by all judges in the Eastern District of Pennsylvania and that the instructions given by the prosecutors were those generally given in this district. Defendant further contends that the charge and instructions were insufficient and therefore prejudicial to the defendant.

According to defendant, the "standard charge" given in the Eastern District consists of a mere recitation of the relevant criminal statutes and does not adequately instruct the laymen who sit on grand juries about the elements of the crimes alleged. Without such guidance, defendant argues, the grand jury cannot determine legitimately whether or not there is probable cause to indict. Defendant Simon also challenges the sufficiency of the charge and instructions on such crucial subjects as evaluating the credibility of witnesses and determining probable cause. It is defendant's contention that as a result of such failures on the part of the court and the government, the grand jury loses its independence as an investigative body and becomes a mere "rubber stamp" of the prosecutor.

■ I do not share defendant's view that there is a standard charge given by the judges of the Eastern District of Pennsylvania when they impanel grand juries. More importantly, however, I believe that plaintiff's argument concerning the inadequacy of the grand jury instructions is based on an incorrect premise. In effect, defendant argues that instructions to a grand jury must be as comprehensive as those given to a petit jury; however, there is no legal authority for such a theory. The functions of the petit jury and of the grand jury are clearly distinguishable. The former is charged with determining the truth of the charges while the job of the latter is to determine whether there is probable cause to believe the charges are true. *See, e. g., Bracy v. United States,* 435 U.S. 1301, 1302, 98 S.Ct. 1171, 1172, 55 L.Ed.2d 489 (1978). Given this difference, the argument that the grand jury must receive as detailed instructions as the petit jury is not persuasive.

Another problem with defendant's argument is that it is based on mere speculation about what happened during the grand jury deliberations which culminated in the present indictment. This motion simply makes a general indictment of the way grand juries operate in this district. Such a broadside attack, lacking both a specific factual basis and supporting legal precedent, cannot justify the dismissal of an indictment, an extraordinary form of relief. As defendant Simon has not succeeded in rebutting the presumptive regularity of the grand jury proceedings, *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), I will deny his motion to dismiss for inadequate and misleading grand jury instructions.

## MOTION TO DISMISS BECAUSE THE GOVERNMENT HAS CHARGED DEFENDANT UNDER THE WRONG STATUTES

■ This motion argues that since Congress has enacted a specific statute dealing with Medicaid fraud, 42 U.S.C. § 1396h, the indictment charging Sidney Simon with seventeen counts of mail fraud, 18 U.S.C. § 1341, and three counts of making a false statement, 18 U.S.C. § 1001, for allegedly filing false and fraudulent Medicaid cost reports should be dismissed. In the Medicaid fraud context, defendant contends, the specific criminal statute, § 1396h has preempted the applicability of more general criminal statutes such as § 1341 (mail fraud) and § 1001 (false statement). Defendant further complains that by so indicting the government has been able to proceed against him on twenty counts rather than three, thus increasing the maximum possible sentence from fifteen years to one hundred years.[5]

---

5. By defendant's calculation he should be charged, if at all, with three counts under

§ 1396h as the indictment concerns three Medicaid cost reports. Conviction on such counts

This theory is flawed in at least two respects. First, defendant has failed to identify either language in 42 U.S.C. § 1396h or any part of its legislative history which would support the view that congress intended the enactment of the statute to preempt the use of other federal criminal statutes in prosecution of Medicaid fraud. Without some evidence of legislative intent a court cannot presume the existence of a preemption.

■ Second, there is no firm rule that the government must choose to prosecute under a specific rather than a general statute.[6] Indeed, the general rule is "that when an act violates more than one criminal statute, the [g]overnment may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). Mr. Simon neither has alleged nor shown that the decision to prosecute him under the mail fraud and false statement statutes resulted from the fact that he belonged to a class of defendants against whom the government discriminates. Rather, it is his contention that the government's decision was based on the fact that proceeding in that way would expose Mr. Simon to greater penalties. The Supreme Court, however, has rejected this argument:

The prosecutor may be influenced by the penalties available upon conviction, but this fact standing alone does not give rise to a violation of the Equal Protection or Due Process clause. *Id.* at 125, 99 S.Ct. at 2205.

Accordingly, I also will deny this motion to dismiss the indictment.

## MOTION TO DISMISS COUNTS 18, 19 AND 20 FOR IMPROPER VENUE

■ The fourth motion to dismiss filed by defendant Simon urges that counts eighteen, nineteen and twenty be dismissed on the ground that venue is not proper in the Eastern District of Pennsylvania. These three counts charge violations of 18 U.S.C. § 1001;[7] allegedly, the defendant knowingly and wilfully made materially false statements (three false Medicaid reports) concerning matters within the jurisdiction of the Department of Health and Human Services. Citing *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961) and Fed.R.Crim.P. 18,[8] defendant argues that in a § 1001 case, the crime is committed only where the false statement is filed, and venue is proper only in the place of filing. As other counts in the indictment state that the three reports were mailed to D.P.W. in Harrisburg, which is located in the Middle District of Pennsylvania, it is defendant's view that venue lies only in that district.

could result in an aggregate maximum prison sentence of fifteen years.

6. The defendant relies on *United States v. Henderson*, 386 F.Supp. 1048 (S.D.N.Y.1974) as supporting this proposition. The *Henderson* decision does not discuss the issue of specific versus general statutes, and thus its analysis cannot aid defendant's argument. In *Henderson*, the court dismissed three counts of mail fraud on the grounds that 1) the mail fraud statute was not intended to apply to a scheme aimed at evading the payment of taxes and 2) the counts were redundant in that they were bottomed on essentially the same allegations as appeared in tax evasion and perjury counts also found in the indictment. *Id.* at 1052, 1054.

7. Section 1001 states:
Whoever, in any matter within the jurisdiction of any department or agency of the Unit-

ed States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than five years, or both.

8. Rule 18 of the Federal Rules of Criminal Procedure provides:
Place of Prosecution and Trial
Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

I do not believe that the *Travis* decision controls the issue of venue presented in this case. In *Travis*, a union officer was indicted and convicted in Colorado for making and filing false non-communist affidavits in violation of § 9(h) of the National Labor Relations Act and Section 35A of the Criminal Code (a statute which has been replaced by 18 U.S.C. § 1001). The Supreme Court reversed the conviction, finding that venue lay not in Colorado but in Washington, D.C. where the non-Communist affidavits were filed with the National Labor Relations Board.

Like the Fifth Circuit, I believe that the *Travis* holding is limited to the factual and legal setting of that case. In *United States v. Herberman*, a case which also involved alleged Medicaid fraud, the Fifth Circuit observed:

... the holding in *Travis* is limited since the applicable statute, Section 9(h) of the National Labor Relations Act, as amended by the Taft-Hartley Act, 61 Stat. 136, 146 and further amended by the Act of Oct. 22, 1951, § 1(d), 65 Stat. 601, 602, read in conjunction with § 1001 requires that the NLRB make no investigation nor issue any complaint in the matters described in that statute unless there was on file with the NLRB a non-Communist affidavit. Section 9(h) did not require union officers to file non-Communist affidavits. Instead, the filings were conditions precedent to a union's use of the NLRB's procedures.

We believe *Travis* merely limits the general venue statute in instances where Congress has particularly limited jurisdiction to the time of filing.
583 F.2d 222, 226–27 (5th Cir. 1978) (citation omitted)

In *Herberman*, the Court of Appeals rejected the defense argument that venue is proper only in the place where the Medicaid/Medicare forms are filed and not where they are filled out, executed and mailed.

**9.** The government has pointed out another reason why venue is proper in this district. Medicaid cost reports, such as are at issue in this case, are received and then compiled by D.P.W.

In this case, unlike in *Travis v. United States*, the statute at issue has not carefully identified the locus of the crime. Therefore, the provisions of the general venue statute, 18 U.S.C. § 3237(a) apply:

Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

The indictment alleges that the false Medicaid cost reports were made and mailed from Doylestown, which is located in this district. Under section 3237, this activity is sufficient to allow prosecution here for the alleged violations of 18 U.S.C. § 1001 by defendant Simon.[9] Therefore, I will deny the motion to dismiss for improper venue.

An appropriate order follows.

in Harrisburg. This compilation is then transmitted to the Health Care Financing Administration of H.H.S. in Philadelphia for administrative review.