[No. S019774. Dec. 19, 1991.]

ROBERT BOWENS, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Jay B. Gaskill, Public Defender, and Harold G. Friedman, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attprney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Clifford K. Thompson and Laurence K. Sullivan, Deputy Attorneys General, for Real Party in Interest.

Ira Reiner, District Attorney (Los Angeles), Harry B. Sondheim and George G. Size, Deputy District Attorneys, Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Real Party in Interest.

## Opinion

**LUCAS, C. J.**—In this case we resolve the issue of whether, in light of the June 5, 1990, adoption of an initiative measure designated on the ballot as Proposition 115 and identified as the "Crime Victims Justice Reform Act," an indicted defendant is entitled to or may receive a postindictment preliminary hearing in the courts of this state. (See also *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d, 160, 820 P.2d 262] [challenge to facial constitutionality of Prop. 115 provisions permitting hearsay testimony at preliminary hearings]; *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304] [*Izazaga*; challenge to facial constitutionality of Prop. 115 reciprocal discovery provisions]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434] [challenge to retroactive application of Prop. 115]; *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077] [*Raven*; single-subject and revision challenges to Prop. 115].)

As will appear, we conclude that a new constitutional provision enacted by Proposition 115 has abrogated the holding of *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916] (*Hawkins*) and that, as such, a defendant indicted in California is no longer entitled to, and indeed may not be afforded, a postindictment preliminary hearing or any other similar procedure.

## I. FACTS

On January 10, 1991, the People filed a grand jury indictment charging petitioner with two counts of selling heroin (Health & Saf. Code, § 11352), and further alleging he had suffered a prior conviction (Pen. Code, § 1203.07, subd. (a)(3)). The acts were alleged to have occurred on or about December 4, 1990, and December 7, 1990. At his arraignment, petitioner moved for a postindictment preliminary hearing, asserting that his equal protection rights had been violated under *Hawkins, supra,* 22 Cal.3d 584. The trial court denied petitioner's motion.

The Court of Appeal summarily denied petitioner's application for a writ of mandate and/or prohibition and request for stay. We stayed all proceedings in the trial court and issued an alternative writ of mandate to consider the important constitutional and interpretive questions presented.

## II. BACKGROUND

The California Constitution expressly sanctions the prosecution of felony cases by grand jury indictment. (Cal. Const., art. I, § 14; see also *Hawkins, supra,* 22 Cal.3d 584, 593.)[1] In *Hawkins,* this court concluded there is a "considerable disparity in the procedural rights afforded defendants charged by the prosecutor by means of an information and defendants charged by the grand jury in an indictment. [Fn. omitted.]" (22 Cal.3d at p. 587.) We noted that although the Penal Code provided those defendants ultimately charged by information with a preliminary hearing presided over by " 'a neutral and legally knowledgeable magistrate, representation by retained or appointed counsel, the confrontation and cross-examination of hostile witnesses, and the opportunity to personally appear and affirmatively present exculpatory evidence [citations],' " the code failed to provide a similar " 'impressive array of procedural rights' " to defendants charged by indictment. (*Ibid.*) We held that, "an accused is denied the equal protection of the laws guaranteed by article I, section 7, of the California Constitution when prosecution is by indictment and he [or she] is deprived of a preliminary hearing and the concomitant rights which attach when prosecution is by information." (*Id.,* at pp. 586-587.)[2]

We concluded in *Hawkins* that until the Legislature prescribed other appropriate procedures for defendants indicted by grand jury, the remedy for the equal protection violation was "simply to permit the indictment process to continue precisely as it [had], but to recognize the right of indicted defendants to demand a postindictment preliminary hearing prior to or at the time of entering a plea." (*Hawkins, supra,* 22 Cal.3d at pp. 593-594.) If the defendant made a timely request for a preliminary hearing, the indictment would be refiled as a complaint, thereby triggering the provisions of the Penal Code providing for a preliminary hearing (Pen. Code, § 859 et seq.). (*Hawkins, supra,* 22 Cal.3d at p. 594.)

*Hawkins* represented the state of the law in June 1990, when the voters enacted Proposition 115, thereby amending the California Constitution.

---

[1] Article I, section 14 of the California Constitution (article I, section 14) provides: "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."

[2] Article I, section 7 of the California Constitution (the state equal protection clause) provides: "A person may not be . . . denied equal protection of the laws . . . ."

■ Proposition 115 added section 14.1 to article I of the California Constitution (article I, section 14.1), which expressly states: "If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing." The issue we address in this case is whether, following the enactment of Proposition 115, an indicted defendant is entitled to or may receive a postindictment preliminary hearing under the federal and state Constitutions.

## III. DISCUSSION

### A. Federal Constitutional Issues

We first discuss the issues raised under the United States Constitution, namely, whether the Fourteenth Amendment mandates that an indicted defendant have the opportunity to receive a postindictment preliminary hearing and the concomitant rights that attach when prosecution is by information. We conclude that the Fourteenth Amendment mandates no such procedure.

■ Federal courts, including the United States Supreme Court, have long held that the due process clause of the Fourteenth Amendment does not require a state to afford preliminary hearings to criminal defendants in the first instance. (See, e.g., *Lem Woon* v. *Oregon* (1913) 229 U.S. 586, 590 [57 L.Ed. 1340, 1342, 33 S.Ct. 783]; see also *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 118-119 [43 L.Ed.2d 54, 67-68, 95 S.Ct. 854]; *United States* v. *Farries* (3d Cir. 1972) 459 F.2d 1057, 1061-1062; *Rivera* v. *Government of Virgin Islands* (3d Cir. 1967) 375 F.2d 988, 989-990; Fed. Rules Crim. Proc., rule 5(c), 18 U.S.C.)

■ Nor is the Fourteenth Amendment's guarantee of equal protection of the laws violated by a system in which defendants prosecuted by indictment are not afforded a preliminary hearing and the concomitant rights that attach when prosecution is by information. Nearly every state and federal court that has considered this federal equal protection issue has come to the same conclusion. (See, e.g., *United States* ex rel. *Kline* v. *Lane* (N.D.Ill. 1989) 707 F.Supp. 368; *United States* v. *Simon* (E.D.Pa. 1981) 510 F.Supp. 232; *State* v. *Clark* (1981) 291 Ore. 231 [630 P. 2d 810], cert. den. 454 U.S. 1084 [70 L.Ed.2d 619, 102 S.Ct. 640]; *State* v. *Robinson* (Del. 1980) 417 A.2d 953; *United States* v. *Shober* (E.D.Pa. 1979) 489 F.Supp. 393; *People* v. *Franklin* (1979) 80 Ill.App.3d 128 [35 Ill. Dec. 121, 398 N.E.2d 1071]; *Seim* v. *State* (1979) 95 Nev. 89 [590 P. 2d 1152]; *State* v. *Reiman* (S.D. 1979) 284 N.W.2d 860; *Lataille* v. *District Court of Eastern Hampden* (1974) 366 Mass. 525 [320 N.E.2d 877]; *Chung* v. *Ogata* (Hawaii 1972) 495 P.2d 26; *Commonwealth* v. *McCloskey* (1971) 443 Pa. 117 [277 A.2d 764], cert. den.

404 U.S. 1000 [30 L.Ed.2d 552, 92 S.Ct. 559]. But see *People* v. *Duncan* (1972) 388 Mich. 489 [201 N.W.2d 629] [providing all felony defendants preliminary hearings under court's inherent supervisory power in area of criminal procedure].)

■ In analyzing a claim based on the Fourteenth Amendment's guarantee of equal protection of the laws, we must first determine the appropriate standard of review. (*Dunn* v. *Blumstein* (1972) 405 U.S. 330, 335 [31 L.Ed.2d 274, 280, 92 S.Ct. 995].) The proper standard of review, as developed by the high court, depends upon the classification involved in, and interests affected by, the challenged law. (*Ibid.*) The challenged law will be subject to strict scrutiny only if it operates to the peculiar disadvantage of a suspect class (see, e.g., *Loving* v. *Virginia* (1967) 388 U.S. 1 [18 L.Ed.2d 1010, 87 S.Ct. 1817]) or impinges on a fundamental right (see, e.g., *Dunn* v. *Blumstein, supra*, 405 U.S. 330).

The determination of whether a suspect class exists focuses on whether "[t]he system of alleged discrimination and the class it defines have [any] of the traditional indicia of suspectness: [such as a class] saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." (*San Antonio School Dist.* v. *Rodriguez* (1973) 411 U.S. 1, 28 [36 L.Ed.2d 16, 39-40, 93 S.Ct. 1278].) ■ Clearly, the system of prosecution contemplated by article I, sections 14 and 14.1 of the California Constitution does not single out a suspect class within the meaning of this definition. (See *United States* ex rel. *Kline* v. *Lane, supra*, 707 F.Supp. at p. 373.)

Nor does the denial of the preliminary hearing procedure implicate a fundamental right under the United States Constitution. (See *United States* ex rel. *Kline* v. *Lane, supra*, 707 F.Supp. 368; see also *Gerstein* v. *Pugh, supra*, 420 U.S. 103; *Lem Woon* v. *Oregon, supra*, 229 U.S. 586.) To the contrary, the use of the grand jury indictment without a preliminary hearing in cases involving serious punishment was the rule at common law. (See *Smith* v. *United States* (1959) 360 U.S. 1, 9 [3 L.Ed.2d 1041, 1047-1048, 79 S.Ct. 991].) Moreover, the process of grand jury indictment is guaranteed by the Fifth Amendment in certain prosecutions in federal courts, showing "the high place [the system of grand jury indictment] held as an instrument of justice." (*Costello* v. *United States* (1956) 350 U.S. 359, 362 [100 L.Ed. 397, 401-402, 76 S.Ct. 406].) It would be anomalous for this court to construe this constitutionally sanctioned felony charging procedure as somehow the very mechanism that denies defendants fundamental rights under the United States Constitution. (See *United States* ex rel. *Kline* v. *Lane, supra*, 707 F.Supp. 368, 373.)

Therefore, because the state's denial of preliminary hearings to indicted defendants neither works to the disadvantage of a suspect class nor encroaches on a fundamental right, the People need only assert a rational basis for the enactment of article I, section 14.1, in seeking to establish its constitutionality. "In cases where a classification burdens neither a suspect group nor a fundamental interest, 'courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws.' " (*Gregory* v. *Ashcroft* (1991) 501 U.S. __, __ [115 L.Ed.2d 410, 430, 111 S.Ct. 2395], quoting *Vance* v. *Bradley* (1979) 440 U.S. 93, 97 [59 L.Ed.2d 171, 176, 99 S.Ct. 939]; see also *Dallas* v. *Stanglin* (1989) 490 U.S. 19, 26 [104 L.Ed.2d 18, 26-27, 109 S.Ct. 1591.)

Article I, section 14.1, passes federal constitutional muster when scrutinized under the rational basis test. We perceive an abundance of legitimate justifications for the state's discretionary use of the indictment procedure to initiate felony prosecutions. Among those justifications are the state's interests in "obtaining a pretrial determination of probable cause without unnecessarily taxing the state's resources" (*United States* ex rel. *Kline* v. *Lane*, *supra*, 707 F.Supp. at p. 373) and creating "a system in which justice is swift and fair" (Prop. 115, § 1, subd. (c), Gen. Elec. (June 5, 1990)). The elimination of the requirement of postindictment preliminary hearings clearly serves these goals.[3]

These legitimate state interests, rationally related to the system of indictment by grand jury without a preliminary hearing, compel our conclusion that the alternative charging procedure contemplated by article I, sections 14

---

[3]Historically, utilization of the grand jury indictment process has served a number of important goals. "The deliberations of the Grand Jury and its voting upon proposed indictments are required by law to be in private session. [Pen. Code, § 924 *et seq*.] [¶] It is significant that secrecy is prohibited in almost every other arm of government. Secrecy exists as to the Grand Jury because it is an agency designed not only to search out offenses and accusations which would not otherwise be acted upon because of the fear or inability of individuals to bring the complaint, but also to protect innocent persons from the publicity that might otherwise occur when charges are eventually proven to be unfounded." (Charge to the Grand Jury of L.A. County, 1984, pp. 17-18.) The grand jury indictment process also serves to maintain the integrity of undercover or other ongoing sensitive criminal investigations, and to thwart flight from the jurisdiction of suspects under investigation (e.g., through the use of sealed indictments; see Pen. Code, § 924). It is frequently utilized when the charges involve allegations of misconduct by a public official, the case requires testimony from witnesses who are nonresidents of the county, there is difficulty interviewing a hostile witness whose testimony may prove vital to the prosecution, or the nature of the charges are of unusual complexity. (Final Report, L.A. County Grand Jury, 1982-1983, pp. 42-43.)

There are other differences between the indictment process and prosecution by information. Whereas the latter prosecutions are generally initiated by local prosecutorial and law enforcement agencies, the Attorney General or a special counsel may initiate a grand jury indictment proceeding. (Pen. Code, §§ 935, 936, 936.5.)

and 14.1 of the California Constitution does not violate the Fourteenth Amendment's guarantee of equal protection of the laws. (See *United States ex rel. Kline* v. *Lane, supra,* 707 F.Supp. 368; *United States* v. *Simon, supra,* 510 F.Supp. 232; *State* v. *Clark, supra,* 630 P.2d 810; *State* v. *Robinson, supra,* 417 A.2d 953; *United States* v. *Shober, supra,* 489 F.Supp. 393; *People* v. *Franklin, supra,* 398 N.E.2d 1071; *Seim* v. *State, supra,* 590 P.2d 1152; *State* v. *Reiman, supra,* 284 N.W.2d 860; *Lataille* v. *District Court of Eastern Hampden, supra,* 320 N.E.2d 877; *Chung* v. *Ogata, supra,* 495 P.2d 26; *Commonwealth* v. *McCloskey, supra,* 277 A.2d 764.) We next consider whether a state constitutional right to a postindictment preliminary hearing has survived the passage of article I, section 14.1.

### B.   State Constitutional Issues

■     Petitioner's assertion of a state constitutional right to a postindictment preliminary hearing is based solely on the equal protection rationale of our decision in *Hawkins, supra,* 22 Cal.3d 584. He maintains the *Hawkins* holding is divisible into two parts: (1) the finding of an equal protection violation, and (2) the remedy created by the court in response to that violation. According to petitioner, article I, section 14.1 was directed solely at the remedy created in *Hawkins,* not the underlying finding of an equal protection violation. He claims the sole effect of article I, section 14.1, if valid, is to eliminate the postindictment preliminary hearing as a proper remedy for the equal protection violation that we found in *Hawkins.*

We disagree that the enactment of article I, section 14.1, had such a limited effect. The only reasonable interpretation of Proposition 115 is that article I, section 14.1 was purposefully intended to abrogate the equal protection analysis underlying the substantive holding of *Hawkins.*

The express mandate of article I, section 14.1—that "[i]f a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing"—is inherently inconsistent with this court's interpretation of the scope of the state equal protection clause in *Hawkins, supra,* 22 Cal.3d 584, 587. (Cf. *Izazaga, supra,* 54 Cal.3d at p. 371 [Prop. 115's "reciprocal discovery" provisions embodied in Cal. Const., art. I, § 30, subd. (c) inherently inconsistent with this court's previous cases prohibiting all prosecutorial discovery under the state self-incrimination clause].) According to its plain, ordinary meaning, article I, section 14.1 bars from the indictment process the very same procedure this court adopted in *Hawkins;* namely, the postindictment preliminary hearing. The inconsistency between the new constitutional provision and this court's previous interpretation of an indicted defendant's rights under the state equal protection clause is inescapable. Thus, in resolving this inconsistency we must apply well settled principles of constitutional interpretation. (*Izazaga, supra,* 54 Cal.3d at p. 371.)

██ "[W]hen constitutional provisions can reasonably be construed so as to avoid conflict, such a construction should be adopted. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; see also *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) As a means of avoiding conflict, a recent, specific provision is deemed to carve out an exception to and thereby limit an older, general provision. (See, e.g., *People* v. *Valentine* (1986) 42 Cal.3d 170, 181 [228 Cal.Rptr. 25, 720 P.2d 913]; *Serrano* v. *Priest, supra,* 5 Cal.3d at p. 596; *People* v. *Western Airlines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723].)" (*Izazaga, supra,* 54 Cal.3d at p. 371.)

██ To the extent *Hawkins* mandates that an indicted defendant be afforded a postindictment preliminary hearing, the voters' adoption of article I, section 14.1 must be seen as abrogating that holding, and limiting the scope of the state constitutional right of equal protection (Cal. Const., art. I, § 7) as it relates to the constitutionally mandated indictment process. (Cf. *Izazaga, supra,* 54 Cal.3d at p. 371; *People* v. *Valentine, supra,* 42 Cal.3d at pp. 170, 181.) Similarly, article I, section 14.1, also limits and thereby precludes a challenge based on the due process clause contained in article I, section 7 of the California Constitution, an issue not reached by the court in *Hawkins.* (See *Hawkins, supra,* 22 Cal.3d 584, 586.)[4]

This interpretation gives full effect to the intent of the electorate in passing Proposition 115 and article I, section 14.1. The manifest intent behind the measure was to prohibit preliminary hearings in criminal cases prosecuted by indictment. The voters' intent is clear from the words of article I, section 14.1. Moreover, this prohibition comports with the general intent of the voters "to create a system in which justice is swift and fair. . . ." (Prop. 115, § 1, subd. (c).) Proposition 115 plainly contemplated the abrogation of *Hawkins* as well as other past decisions of this court. (See, e.g., *Izazaga, supra,* 54 Cal.3d at p. 372.) The preamble to Proposition 115 states that "comprehensive reforms are needed in order to restore balance and fairness to our criminal justice system" (Prop. 115, § 1, subd. (a)), and that "we the people further find that it is necessary to reform the law as developed in numerous California Supreme Court decisions. . . ." (Prop.

---

[4]We reiterate, however, that the California Constitution continues to afford criminal defendants an independent source of protection from infringement of certain rights, including the rights of equal protection and due process of the law. (See *Raven, supra,* 52 Cal.3d 336 [invalidating Prop. 115 to extent it would have required interpretation of various state constitutional rights of criminal defendants consistently with analogous rights in federal Constitution].) These general rights of criminal defendants, however, are necessarily limited to the extent they are inconsistent with the express prohibition of postindictment preliminary hearings contained in article I, section 14.1. (See *Izazaga, supra,* 54 Cal.3d at p. 372; *People* v. *Valentine, supra,* 42 Cal.3d at p. 181.)

115, § 1, subd. (b).) As we stated in *Raven, supra,* 52 Cal.3d 336, Proposition 115 adopted "various changes in procedural or substantive law previously mandated by this court. For example, the restriction on postindictment preliminary hearings seems directed toward our holding in *Hawkins* . . . ." (52 Cal.3d at p. 348.)

We therefore conclude that article I, section 14.1, as enacted by the voters of California, has abrogated the holding of *Hawkins, supra,* 22 Cal.3d 584, such that an indicted defendant is no longer deemed denied the equal protection of the laws under article I, section 7 of the California Constitution, by virtue of the defendant's failure to receive a postindictment preliminary hearing.

Having rejected petitioner's argument that article I, section 14.1 was directed solely at the remedy created in *Hawkins* and not its underlying equal protection analysis, we must likewise reject his invitation to this court to fashion an alternative remedy to redress the equal protection violation he perceives as having survived the enactment of article I, section 14.1.

Petitioner contends we could fashion a "quasi-preliminary hearing" for indicted defendants. According to petitioner, the quasi-preliminary hearing would be held before a neutral judicial officer, the defendant would be represented by counsel and permitted to present exculpatory evidence, and the prosecutor would bear the burden of establishing probable cause to bind the defendant over for the alleged offense.

We conclude that mandating such a "quasi-preliminary hearing" following indictment by grand jury would be unconstitutional under article I, section 14.1. Our primary task in interpreting constitutional provisions adopted by initiative is to determine and give effect to the intent of the voters. (See *Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538 [58 P.2d 1278].) To do so, a constitutional provision should not be construed so as to undermine its validity. (*ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 865 [210 Cal.Rptr. 226, 693 P.2d 811] [*ITT World Communications*].) Article I, section 14.1 prohibits "postindictment preliminary hearing[s]." This prohibition necessarily includes postindictment *quasi*-preliminary hearings, as well as all other procedures that closely resemble preliminary hearings, irrespective of the legal nomenclature under which such procedures are cloaked. To hold otherwise would render meaningless the language of article I, section 14.1, and thereby subvert the intent of the voters in passing Proposition 115. (See *ITT World Communications, supra,* 37 Cal.3d at p. 865.)

Petitioner also asserts that this court could remedy the perceived equal protection violation by simply striking down all grand jury indictments. This

would force prosecutors to refile all indictments as complaints and would effectively eliminate the grand jury system as a means of charging defendants in the courts of this state.

The conclusion we have reached respecting the scope of article I, section 14.1, obviates the necessity to further consider this proposal. We note, however, that it is entirely unjustifiable; striking down all grand jury indictments was patently *not* the intent of the voters in adopting Proposition 115. (See *Kaiser* v. *Hopkins, supra,* 6 Cal.2d 537, 538.) If the voters intended to eliminate grand jury indictments through the adoption of article I, section 14.1, it would be illogical to include in that very provision language that contemplates the continued vitality of the grand jury indictment process in the courts of this state ("If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing."). Moreover, a constitutional provision generally should not be construed to impliedly repeal another constitutional provision. (*ITT World Communications, supra,* 37 Cal.3d at p. 865.) Striking all grand jury indictments as unconstitutional would render without effect article I, section 14 (*ante,* at p. 40, fn. 1)—the provision of the state Constitution that explicitly sanctions prosecution of felony cases by grand jury indictment. (See *Hawkins, supra,* 22 Cal.3d at p. 593.)[5]

Petitioner's reliance on *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] (*Lance W.*) is also misplaced. In *Lance W.,* we were called on to determine the effect of a new constitutional provision enacted by Proposition 8, providing that " 'relevant evidence shall not be excluded in any criminal proceeding . . . .' " (*Lance W., supra,* 37 Cal.3d at p. 879.) We held the new constitutional provision did not affect the substantive scope of the state Constitution's search and seizure prohibitions, but merely abrogated the "judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*Id.,* at pp. 886-887, italics in original.) Petitioner asserts article I, section 14.1 similarly eliminated only the remedy announced in *Hawkins,* not the underlying constitutional violation.

Here, however, the manifest intent of the voters in enacting article I, section 14.1 was to abrogate the *Hawkins* court's finding of an equal

[5]We note the distinction between this proposed remedy and the remedy fashioned by the court in *Hawkins, supra,* 22 Cal.3d 584. In *Hawkins,* the immediate result was to require refiling of indictments as complaints following a timely request for a preliminary hearing. The *Hawkins* remedy, however, was fashioned for the short term, in anticipation of legislative enactment of "other appropriate procedures" applicable to indicted defendants that would eliminate the equal protection violation. (*Id.,* at pp. 593-594.) In contrast, petitioner's proposed construction of article I, section 14.1 would completely eliminate indictments as a method of charging defendants in the courts of this state by putting that procedure beyond the purview of the Legislature.

protection violation when indicted defendants are denied a preliminary hearing. The *Hawkins* remedy serves no purpose other than to vindicate the indicted defendant's equal protection rights as perceived in that opinion. In short, the right and remedy in *Hawkins* are not severable, and *Lance W.* is therefore inapposite.

■ Last, petitioner claims the equal protection analysis of *Hawkins* survives Proposition 115 in light of our decision in *Raven, supra,* 52 Cal.3d 336. Section 3 of Proposition 115 sought to amend article I, section 24 of the California Constitution by adding language that certain enumerated state constitutional rights of criminal defendants, including the right to equal protection of the laws, shall be construed consistently with the federal Constitution. (See *Raven, supra,* 52 Cal.3d 336, 350.) Section 3 of Proposition 115 further provided that the state Constitution could not be construed to afford criminal or juvenile defendants greater rights than those afforded by the federal Constitution. (*Ibid.*) In *Raven,* we held that section 3 of Proposition 115 represented an invalid revision of the California Constitution. We struck and severed the invalid section from the remainder of the initiative measure, thereby acknowledging the continued independent vitality of the state constitutional rights enumerated therein. (52 Cal.3d at pp. 351, 355-356.)

Relying on *Raven, supra,* 52 Cal.3d 336, petitioner argues that article I, section 14.1 is also invalid because it is "functionally dependent" on severed section 3 of Proposition 115. He claims section 3 of Proposition 115 attempted to limit the scope of the state equal protection clause as interpreted in *Hawkins,* whereas article I, section 14.1 merely attempts to eliminate the remedy created in *Hawkins* in response to the equal protection violation.

Petitioner's reliance on *Raven* to resurrect the holding of *Hawkins* is unavailing. In determining the intent of the voters in adopting a constitutional provision by initiative, the court must first look to the words of the constitutional provision at issue and need look no further if the answer is clear and unambiguous in the natural and ordinary meaning of its words. (See *Lungren* v. *Deukmejian, supra,* 45 Cal.3d 727, 735; see also *ITT World Communications, supra,* 37 Cal.3d 859, 865.) Article I, section 14.1 is clear and unambiguous: "If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing." The natural and ordinary meaning of the provision is obvious: it prohibits preliminary hearings following grand jury indictment. With the addition of article I, section 14.1 to the state Constitution, neither the Legislature nor the courts, unless compelled by the United States Constitution, may mandate preliminary hearings in felony

matters prosecuted by indictment. (See *People* v. *Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 528 [143 Cal.Rptr. 609, 574 P.2d 425, 2 A.L.R.4th 681].)

We find nothing in the structure or wording of article I, section 14.1 that manifests an intent on the part of the voters to render it "functionally dependent" on the invalidated section 3 of Proposition 115. To the contrary, Proposition 115 contains a severance clause that states: "If any provision of this measure or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the measure which can be *given effect* without the invalid provision or application, and to this end the provisions of this measure are severable." (Prop. 115, § 29, italics added.) The intent behind the severance clause is clear. In *Raven* we stated, "[t]he remaining provisions of Proposition 115 clearly can be 'given effect' without regard to the validity or operation of" invalidated section 3 of Proposition 115. (*Raven, supra,* 52 Cal.3d at p. 355.) Article I, section 14.1 has not been invalidated by our holding in *Raven*.

### IV. DISPOSITION

■ We conclude that under the federal and state Constitutions, following the enactment of Proposition 115 by the voters of California, an indicted defendant is not entitled to, and indeed may not receive, a postindictment preliminary hearing or any other similar procedure in the courts of this state.

Accordingly, the alternative writ of mandate issued by this court on May 1, 1991, is discharged, and the peremptory writ is denied. The order of the Court of Appeal is affirmed.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent. It is a maxim of jurisprudence that "For every wrong there is a remedy." (Civ. Code, § 3523.) Today, the majority purport to fabricate an exception for violations of the equal protection clause of article I, section 7, of the California Constitution. In such a labor I cannot, and will not, join.

### I

In *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 586-587 [150 Cal.Rptr. 435, 586 P.2d 916], we concluded that "an accused is denied the equal protection of the laws guaranteed by article I, section 7, of the California Constitution when prosecution is by indictment and he is deprived

of a preliminary hearing and the concomitant rights which attach when prosecution is by information."

The basis of our holding was that there was a "considerable disparity in the procedural rights afforded defendants charged by the prosecutor by means of an information and defendants charged by the grand jury in an indictment. The defendant accused by information 'immediately becomes entitled to an impressive array of procedural rights, including a preliminary hearing before a neutral and legally knowledgeable magistrate, representation by retained or appointed counsel, the confrontation and cross-examination of hostile witnesses, and the opportunity to personally appear and affirmatively present exculpatory evidence.' [¶] In vivid contrast, the indictment procedure omits *all* the above safeguards . . . ." (22 Cal.3d at p. 587, italics in original, fn. and citations omitted.)

In *Hawkins*, we further concluded that the "appropriate remedy for the constitutionally infirm treatment of indicted defendants is not to eliminate or alter radically the general indicting function of the grand jury; indeed, that function is explicitly sanctioned in the California Constitution and specifically implemented by the Legislature. Until such time as the Legislature may prescribe other appropriate procedures, the remedy most consistent with the state Constitution as a whole and least intrusive on the Legislature's prerogative is simply to permit the indictment process to continue precisely as it has, but to recognize the right of indicted defendants to demand a post-indictment preliminary hearing prior to or at the time of entering a plea. . . .

"The state constitutional provision recognizing the grand jury's indicting function—article I, section 14—is no bar to our holding herein. It provides, 'Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information.' The term 'law,' of course, encompasses judicial decisions as well as legislative enactments. Thus, while the Constitution authorizes the use of grand juries to indict criminal defendants, it leaves to the Legislature and the courts the task of developing procedures, consistent with other state constitutional provisions, for implementing that mode of initiating prosecutions." (22 Cal.3d at pp. 593-594, citations omitted.)

At the June 5, 1990, Primary Election, the voters approved an initiative constitutional amendment and statute that was designated on the ballot as Proposition 115—the self-styled "Crime Victims Justice Reform Act."

Section 2 of the measure added section 14.1 to article I of the California Constitution: "If a felony is prosecuted by indictment, there shall be no postindictment preliminary hearing."

Section 3 of the initiative purported to add the following relevant text to section 24 of article I of the state charter: "In criminal cases the right[] of a defendant to equal protection of the laws . . . shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. This Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States . . . ."

Section 5 of the initiative added section 30 to article I of the state charter, to provide in subdivision (b) thereof that hearsay may be admitted at preliminary examinations, as prescribed by regular legislation or popular initiative.

Section 8 of the measure added section 1203.1 to the Evidence Code, to provide that section 1203 of that code, generally allowing the cross-examination of hearsay declarants, is not applicable at preliminary examinations.

Section 16 of the initiative amended section 866 of the Penal Code on three points relevant here. First, on the People's request, the defendant at a preliminary examination must make an offer of proof as to the expected testimony of a witness, and may subsequently call the witness only if his testimony would be reasonably likely to negate an element of a crime, impeach a prosecution witness or declarant, or establish an affirmative defense. Second, the preliminary examination may not be used for discovery. Third, the taking of depositions is not compelled or authorized.

Section 18 of the initiative, in pertinent part, added a new subdivision (b) to section 872 of the Penal Code, which allows hearsay at preliminary examinations if given by a law enforcement officer who satisfies certain requirements.

## II

On January 10, 1991, the Grand Jury of the County of Alameda, on behalf of the People, handed up an indictment to the superior court against petitioner Robert Bowens. In separate counts, it accused Bowens of selling heroin, in violation of Health and Safety Code section 11352, on December 4 and 7, 1990. It separately alleged that he had suffered a prior conviction of possession of narcotics for sale within the meaning of Penal Code section 1203.07, subdivision (a)(3) (ineligibility for probation or suspension of sentence) and Health and Safety Code section 11370.2, subdivision (a) (enhanced punishment).

At arraignment, Bowens moved the superior court for a postindictment preliminary examination or any other appropriate relief to remedy the violation of his state constitutional right to equal protection, as construed in

*Hawkins*, arising out of the deprivation of such an examination prior to indictment. He was unsuccessful.

He then petitioned the Court of Appeal for the First Appellate District for a writ of mandate and/or prohibition against the superior court, and requested a stay. There too he was unsuccessful, meeting with summary denial.

Thereupon, he petitioned this court for review and requested a stay. Here, he was successful. We limited the issue to "whether in light of Proposition 115 a defendant is entitled to a post-indictment preliminary examination or any other remedy." We then directed issuance of an alternate writ of mandate. The writ issued.

## III

As I shall explain, the superior court erred by denying Bowens's motion and the Court of Appeal erred by refusing his petition. Even after Proposition 115, there is a violation of the equal protection of the laws under article I, section 7, of the California Constitution when some defendants are prosecuted by information after a preliminary examination and others are prosecuted by indictment without any such examination. A violation of this sort can obviously be avoided. If not avoided, however, it must be remedied. A postindictment preliminary examination is no longer available for the purpose, but other mechanisms are.

The initial question to be addressed is whether, after Proposition 115, there remains the violation of the state constitutional right to equal protection found by *Hawkins*. The answer is affirmative.

Recall that at the time of *Hawkins*, there was a "considerable disparity in . . . procedural rights" (22 Cal.3d at p. 587) between defendants prosecuted by information and those prosecuted by indictment. The former were entitled, inter alia, to "a preliminary hearing before a neutral and legally knowledgeable magistrate, representation by retained or appointed counsel, the confrontation and cross-examination of hostile witnesses, and the opportunity to personally appear and affirmatively present exculpatory evidence." (*Ibid.*, internal quotation marks omitted.) By contrast, the latter enjoyed none of these safeguards.

After Proposition 115, this considerable disparity in procedural rights survives. The initiative gives nothing whatever to defendants prosecuted by indictment. Moreover, it takes little away from defendants prosecuted by information. Such defendants are still entitled to a hearing before a neutral

and legally knowledgeable magistrate. Here, the measure makes no change. Such defendants are still entitled to representation by retained or appointed counsel. Here too, the measure makes no change. Such defendants are still entitled to confront and cross-examine hostile witnesses. True, the measure somewhat limits their rights in this regard by relaxing the rules involving hearsay. But the relaxation it effects is itself quite limited. (See *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072-1075, 1082 [2 Cal.Rptr.2d 160, 820 P.2d 262].) Finally, such defendants are still entitled to personally appear and affirmatively present exculpatory evidence. As to appearance, the measure yet again makes no change. As to evidence, it does little more. Certain restrictions and conditions are indeed imposed. But none appreciably affects *exculpatory* evidence.

To be sure, after Proposition 115 the preliminary examination may not be used for discovery. But the availability *vel non* of discovery did not constitute any significant aspect of the considerable disparity in procedural rights that we discerned in *Hawkins*. There, we simply observed that the preliminary examination "serves a number of pragmatic functions for the accused," among them discovery, and that the grand jury inquiry is not comparable in this regard. (22 Cal.3d at pp. 588-589.) A dissenting justice read our observation to "suggest[] that the preliminary examination serves an essential secondary function of providing the accused with pretrial discovery regarding the case against him." (*Id.* at p. 619 (dis. opn. of Richardson, J.).) It did no such thing.

In conducting my analysis, I have not overlooked sections 2 and 3 of Proposition 115. Apparently, these two provisions amount to an attempt to overrule *Hawkins* in its entirety. Section 3 was intended to effectively abrogate the state constitutional right to equal protection and, as a result, to remove the violation we had found *and* to eliminate the remedy we had ordered. Section 2 had a different purpose. Recall that in *Hawkins* we stated that the Legislature and the judiciary had broad authority under the state charter to prescribe procedures for prosecution by indictment, including the power to require or allow postindictment preliminary examinations. Section 2 was intended to withdraw that authority as to such examinations.

Proposition 115's attempt to overrule *Hawkins* in toto was unsuccessful. It appears that section 2 is valid. Henceforth, neither the Legislature nor the judiciary seemingly has authority to require or allow postindictment preliminary examinations. But it is unquestionable that section 3 is *not* valid. We so held, unanimously, in *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 349-355 [276 Cal.Rptr. 326, 801 P.2d 1077]. Therefore, *the state constitutional right*

*to equal protection has not been abrogated.* It follows that the violation we found in *Hawkins* remains. But through the operation of section 2, the remedy we ordered therein is no longer available.

The majority conclude to the contrary. They rest on the premise that Proposition 115 "plainly contemplated" the overruling of *Hawkins* in its entirety. (Maj. opn., *ante*, at p. 45.) True, the promoters of the initiative may have intended that result. But as *Raven* teaches, they failed in that regard.

The majority effectively construe the words of Proposition 115's apparently valid section 2 to contain the substance of its unquestionably invalid section 3. Such a construction is insupportable. It ignores the independent purpose and effect of the two related provisions. It would also render section 2 redundant in pertinent part to section 3. Section 3, if valid, would have abrogated the state constitutional right to equal protection and would thereby have removed the violation and eliminated the remedy. Section 2 would then abrogate a right already abrogated, remove a violation already removed, and eliminate a remedy already eliminated. An interpretation yielding redundancy should be avoided. (*City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) I recognize that section 2 makes the remedy we ordered in *Hawkins* no longer available. But contrary to the majority's repeated, bald assertions, the unavailability of this particular remedy—which we viewed in *Hawkins* to be neither permanent nor necessary—does not itself abrogate the constitutional right or remove the constitutional violation.

The next issue to be considered is: Can a violation of the state constitutional right to equal protection be avoided? Yes, obviously so. The People may prosecute all defendants by indictment. Or they may prosecute all by information. Or they may choose to prosecute some by indictment and some by information *if* the Legislature makes the two procedural modes substantially similar—as by giving defendants subject to grand jury inquiry rights similar to those enjoyed by defendants facing preliminary examination. It might even be enough if the indictment process was simply opened. True, there would not be a neutral and legally knowledgeable magistrate to preside over the grand jury inquiry. But defendants could be allowed representation by retained or appointed counsel, confrontation and cross-examination of hostile witnesses, and an opportunity to personally appear and affirmatively present exculpatory evidence.

The issue that follows is this: If not avoided, must a violation of the state constitutional right to equal protection be remedied? Again, yes and obviously so. As noted, "For every wrong there is a remedy." (Civ. Code,

§ 3523.) This principle seems peculiarly applicable when, as here, the wrong is of constitutional dimension.

The final question concerns remedies. After Proposition 115, a postindictment preliminary examination is no longer available. Moreover, it appears that any substantial equivalent to such a procedure is impliedly barred. But notwithstanding the majority's implication, other constitutionally permissible mechanisms are surely available. For the future, I would leave the choice to the Legislature in the first instance. For the case at bar, I would require a form of relief that is consistent with this opinion.

IV

For all the reasons stated above, I conclude that the superior court erred by denying Bowens's motion and the Court of Appeal erred by refusing his petition.

I would therefore reverse the order of the Court of Appeal with directions to cause the issuance of a peremptory writ as prayed.