[No. 12537. In Bank. — May 1, 1889.]

THE PEOPLE ex rel. JOSEPH R. DAVIDSON, Appellant, *v.* A. W. PERRY, Respondent.

Supreme Court — Appellate Jurisdiction — Quo Warranto. — An action instituted by the attorney-general, under the Code of Civil Procedure, to determine the respective claims of a relator appointed by the governor, and the defendant as incumbent of the office of member of the board of health of the city and county of San Francisco, is within the appellate jurisdiction of the supreme court, as being a case at law substantially in the nature of a *quo warranto;* and when a fine of five thousand dollars is prayed, and might be granted for usurpation of the office, the case is also within the appellate jurisdiction as embracing a money demand amounting, exclusive of interest, to more than three hundred dollars.

Board of Health — Filing Official Oath — Vacancy. — A member of the board of health of the city and county of San Francisco is included within the literal terms of both the first and second subdivisions of section 909 of the Political Code, and might properly file his oath of office with the secretary of state, and also with the county clerk; but having duly taken the oath, and filed it with the secretary of state, his failure also to file it with the county clerk is not such a refusal or neglect to file his official oath as will forfeit his office or create a vacancy under subdivision 9 of section 996 of the Political Code.

Forfeiture — Construction. — Provisions for forfeiture of vested rights, whether in statutes or contracts, are not favored, and are construed strictly against the forfeiture, or as liberally as possible to prevent it.

Constitutional Law — Office — Board of Health — Duration of Term — Appointing Power of Governor. — The members of the board of health of the city and county of San Francisco are officers, within the meaning of article 11, section 7, of the old constitution, and of article 20,

| 79 | 105 |
| 82 | 242 |
| 79 | 105 |
| 84 | 307 |
| 79 | 105 |
| 85 | 511 |
| 79 | 105 |
| 96 | 608 |
| 79 | 105 |
| 110 | 658 |
| 79 | 105 |
| J114 | 475 |
| 79 | 105 |
| 127 | 393 |
| 127 | 399 |
| 79 | 105 |
| f133 | 182 |
| 133 | 248 |
| 79 | 105 |
| 135 | 416 |
| 79 | 105 |
| 143 | 420 |

section 16, of the new constitution; and a statute fixing their term of office at five years is unconstitutional, and leaves the duration of the term unfixed, and subject to the pleasure of the governor, who may appoint a new incumbent at any time.

Id. — Effect of Unconstitutionality of Parts of Statute. — An entire legislative act will not be declared invalid merely because some single section or isolated provision is in conflict with the constitution; but a clause of a statute which, as enacted, is unconstitutional cannot be changed in meaning so as to give it some operation, when admittedly it cannot operate as the legislature intended.

Appeal from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*David McClure, R. S. Mesick, Garret W. McEnerney,* and *M. M. Estee,* for Appellant.

*S. M. Wilson,* and *Wilson & Wilson,* for Respondent.

Beatty, C. J. — This is an action instituted by the attorney-general under the provisions of chapter 5 of title 10, part 2, of the Code of Civil Procedure, sections 802 to 810, to determine the respective claims of the relator and the defendant to the office of member of the board of health of the city and county of San Francisco.

A general demurrer to the complaint was sustained by the superior court, and judgment thereupon rendered in favor of the defendant, from which the plaintiff appeals.

It appears from the complaint that the defendant was appointed a member of the board of health by the late Governor Bartlett, on the fourteenth day of April, 1887. He was notified of his appointment on the following day, and six days later — April 21, 1887 — assumed the office. He took and subscribed the official oath, and filed the same with the secretary of state in due time, but he has never filed it in the office of the county clerk of San Francisco.

In this state of the case, Governor Waterman, on the

twenty-third day of November, 1887, appointed and commissioned the relator a member of the board, in the place and stead of the defendant.

Relator thereupon, and within ten days after being notified of his appointment, took and subscribed the oath of office, and filed the same with the clerk of San Francisco.

But the defendant, after notice of relator's appointment and qualification, refused—and was sustained by the board in refusing—to admit him to the office.,

These allegations of the complaint, confessed by the demurrer to be true, present the two questions upon which the decision of the controversy depends.

It is conceded that if there was a vacancy in the office at the date of relator's appointment, or if the tenure of the incumbent was during the pleasure of the governor, the title of the relator is valid. And in his behalf it is contended: 1. That there was a vacancy in the office by reason of the failure of defendant to file his official oath in the office of the clerk of San Francisco; and 2. That whether such vacancy existed or not, the tenure of the office is, under the law and the constitution, at the pleasure of the governor.

But before entering upon a discussion of these questions, it will be necessary to dispose of a preliminary objection of the respondent to the jurisdiction of this court to entertain the appeal.

He claims that the jurisdiction of this court is derived from the constitution alone, and can neither be enlarged nor restricted by the legislature, and he contends that cases of this character are not comprehended in the constitutional enumeration of cases in which this court has jurisdiction.

Section 4 of article 6 of the constitution provides as follows: "The supreme court shall have appellate jurisdiction in all cases in equity, except such as arise in justices' courts; also in all cases at law which involve the

title or possession of real estate, or the legality of any tax, impost, assessment, toll, or municipal fine, or in which the demand, exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars; also in cases of forcible entry and detainer, and in proceedings in insolvency, and in actions to prevent or abate a nuisance, and in all such probate matters as may be provided by law; also in all criminal cases prosecuted by indictment or information in a court of record on questions of law alone."

We understand the argument to be that this is not a case in equity, nor a case at law, but that it is an action in a particular case,—a special statutory proceeding similar to that under consideration in *Houghton's Appeal,* 42 Cal. 36.

We cannot assent to this view. There is no analogy between this case and the proceeding which the court was asked to review in *Houghton's Appeal.*

That was an assessment of damages and benefits resulting from the change of grade of certain streets. This is a proceeding substantially equivalent to that by *quo warranto.* It is the same as *quo warranto,* with something added.

*Quo warranto* was a case at law; it afforded the legal remedy for the usurpation of an office; and we think this court retains jurisdiction of the *case,* notwithstanding the legislatute may have changed the procedure, enlarged the remedy, and given it a new name. To hold otherwise would be to admit a power in the legislature to abridge our jurisdiction, and take from parties the right of appeal, by the easy device of a change of procedure, in many cases, where the right and jurisdiction are unquestioned.

This case also sustains the other test of jurisdiction. It embraces a money demand, amounting, exclusive of interest, to more than three hundred dollars. The office, it is true, is purely honorary, the incumbent being en-

titled to no salary or other pecuniary reward. But the court may, in its discretion, in any action for the usurpation of an office, in case of a decision adverse to the defendant, impose, as part of the judgment, a fine of five thousand dollars. (Code Civ. Proc., sec. 809.) And in this case such judgment is prayed.

Without reference, therefore, to the numerous "particular cases," in which this court has assumed and exercised appellate jurisdiction, or the cases (such as *Palache* v. *Hunt*, 64 Cal. 474) in which it has been held that a meaning must be attributed to the section of the constitution above quoted broader than is contained in its express terms, we feel fully warranted in holding that we have jurisdiction of this appeal as a case at law in which there is a demand, exclusive of interest, exceeding three hundred dollars.

Coming, then, to the merits of the controversy, we will consider first whether there was a vacancy in the office, caused by defendant's failure to file his official oath with the county clerk.

Section 3 of article 20 of the constitution provides the form of official oath to be taken and subscribed by all officers before entering upon the duties of their respective offices.

Section 904 of the Political Code contains a similar provision.

Sections 907 and 909 are as follows:—

"Sec. 907. Whenever a different time is not prescribed by law, the oath of office must be taken, subscribed, and filed within ten days after the officer has notice of his election or appointment, or before the expiration of fifteen days from the commencement of his term of office, when no such notice has been given."

"Sec. 909. Every oath of office, certified by the officer before whom the same was taken, must be filed within the time required by law, except when otherwise specially provided, as follows:—

"1. The oath of all officers whose authority is not limited to any particular county, in the office of the secretary of state.

"2. The oath of all officers elected or appointed for any county, and of all officers whose duties are local, or whose residence in any particular county is prescribed by law, in the offices of the clerks of their respective counties.

"3. Each judge of a superior court and county clerk must, as soon as he has taken and subscribed his official oath, file a copy thereof, signed with his own proper signature, in the office of the secretary of state."

If the defendant was such an officer as is described in the first subdivision of section 909, he was clearly right in filing his oath of office with the secretary of state.

If he was such an officer as is described in the second subdivision, he would have been as clearly right in filing his official oath with the county clerk.

It happens, as we construe the act creating the office, that it is embraced by both subdivisions. The authority of the board is not limited to any particular county, but residence of the members in a particular county is prescribed by law.

"The board of health for the city and county of San Francisco consists of the mayor of the city and county, and four physicians in good standing *residing in the city and county of San Francisco*, appointed by the governor, and *holding their offices for the term of five years.*" (Pol. Code, sec. 3005.)

But the board has authority to appoint a health officer, not only for the city and county, but for the *port* of San Francisco. (Sec. 3007.)

The quarantine grounds of the bay and harbor of San Francisco are fixed at the anchorage of Sausalito, in Marin County. (Sec. 3004.) The board appoints a quarantine officer. (Sec. 3009.)

All vessels coming into the harbor with cholera,

small-pox, etc., must report to the quarantine officer. (Sec. 3013; and see secs. 3014–3017.)

The board may provide and maintain suitable hospitals at Sausalito. (Sec. 3022.) In short, they may exercise authority, not only in San Francisco, but in all the counties, including any part of the bay of San Francisco, and especially in Marin.

Was it, then, the intention of the legislature that these officers should file their official oath in two places,—one with the secretary of state, and another with the county clerk? Or was it sufficient to file it in one place,—with the clerk or the secretary, as they might choose?

We have little doubt that in framing the provisions of section 909 of the Political Code, it was intended and understood that subdivisions 1 and 2 should embrace distinct categories, mutually exclusive, and that the case of an office embraced under each was never contemplated; and consequently that it was not, in fact, intended that the oath should be filed in both places; but, at the same time, it is no doubt true that an officer whose residence in San Francisco is prescribed, but whose authority extends to other counties, does not fully and literally comply with the directions of the statute unless he files his oath of office with both the county clerk and the secretary of state. The question, however, still remains, Does a failure to comply with this improvident exigency of the law in its literal terms work a forfeiture of the office?

By section 996 of the Political Code, it is provided that " an office becomes vacant on the happening of either of the following events: . . . . 9. His refusal or neglect to file his official oath or bond within the time prescribed."

Independent of this provision of the code, the requirement as to *filing the oath* within a certain time might well be treated as merely directory,—not working a forfeiture in case of non-compliance,—and we are not prepared to hold that an officer who by the first subdivision of section 909 is directed to file his official oath with the

secretary of state, and by the second subdivision is directed to file the same oath with the county clerk, has, within the meaning of the section denouncing a forfeiture of the office (section 996), *refused* or *neglected* to file his official oath, when he has, in fact, filed it with the secretary of state.

Provisions for forfeiture of vested rights, whether in statutes or contracts, are not favored, and are, as they ought to be, construed as strictly or as liberally as possible against the forfeiture.

In this case it is not literally true that the officer has neglected or refused to file his oath of office. The most that can be said is, that he has neglected to file it in one of the two offices where, by apparent inadvertence, the the legislature has, upon a doubtful construction, directed it to be filed. Having complied with the constitutional requirement of *taking and subscribing* the oath, and satisfied the object and policy of the statute by filing it in the office where state officers (to which class he belongs: Pol. Code, secs. 343, 360, 3005) generally are required to file their official oaths, we think he is protected against the forfeiture, and that if the relator is entitled to the office, it is only because the members of the board of health hold at the pleasure of the appointing power.

The act creating the board of health was passed April 4, 1870, and was entitled "An act to establish a quarantine for the bay and harbor of San Francisco, and sanitary laws for the city and county of San Francisco." (Stats. 1869–70, p. 716.) Its main provisions were subsequently incorporated into the Political Code (secs. 3004 et seq.), and it was afterward supplemented by several statutes, all passed prior to the adoption of the new constitution.

By section 2 of the act corresponding to section 3004 of the Political Code, the membership of the board is prescribed, and the term of its members other than the

mayor of San Francisco, who is *ex officio* a member, is fixed at five years. The authority conferred upon the board embraces the power to appoint subordinate executive officers, to exercise a general supervision over all matters appertaining to the sanitary condition of the city, to control the landing of passengers and freight, to seclude persons affected with contagious diseases, control burials, and abate nuisances.

There can be no doubt, we think, that this constitutes the members of the board *officers* within the meaning of that term as used in article 11, section 7, of the old constitution. Unlike the commissioners of the funded debt, who in *People* v. *Middleton*, 28 Cal. 605, were held not to be officers within the meaning of the section referred to, the members of this board exercise important police powers pertaining to the administration of the state government, and are officers according to the strictest definition of the term.

So much of the act, therefore, as fixed the duration of their office at five years was in direct conflict with the section cited from the constitution of 1863, then in force, which reads as follows:—

"Sec. 7. When the duration of any office is not provided for in this constitution, it may be declared by law; and if not so declared, such office shall be held during the pleasure of the authority making the appointment; nor shall the duration of any office, not fixed by this constitution, ever exceed four years."

And we think it is equally in conflict with the corresponding provision of the new constitution, which reads as follows:—

"When the term of any officer or commissioner is not provided for in this constitution, the term of such officer or commissioner may be declared by law; and if not so declared, such officer or commissioner shall hold his position as such officer or commissioner during the

pleasure of the authority making the appointment; but in no case shall such term exceed four years."

The argument of counsel for respondent that this section of the new constitution refers exclusively to officers mentioned in the constitution itself, and not to offices of statutory creation, is ingenious, but not convincing. In its terms the section embraces all classes of officers, statutory as well as constitutional, and no considerations of policy are suggested requiring any abridgment of its apparent meaning.

The words "such term," in the last clause, evidently refer, as their antecedent, to the term to be declared by law when not provided in the constitution. And it is contrary to the whole tenor and spirit of the constitution to suppose that, while its framers carefully limited the terms of all executive officers by them created within the period of four years, they would give unlimited power to the legislature to create offices with terms extending indefinitely beyond that period.

We must hold, therefore, that the clause of the act fixing the term at five years is unconstitutional, and unless we can at the same time hold, in accordance with the contention of respondent, that it is only unconstitutional as to the excess of the term attempted to be fixed over that permitted by the constitution, it follows that no term has been declared by law, and consequently that the defendant held at the pleasure of the governor, and that the relator's title is valid.

It is, of course, a familiar doctrine that an entire legislative act will not be declared invalid merely because some single section or isolated provision is in conflict with the constitution. If this were not so, it would follow that the attempt of the legislature, in the act under consideration, to make the term of the members of the board of health five years, had the effect of destroying the entire statute. . .

It is clear, we think, under the authorities, that no

such effect follows, and that, on the contrary, the act is in other respects valid and in force.

But we know of no precedent for holding that a clause of a statute, which as enacted is unconstitutional, may be changed in meaning in order to give it some operation, when admittedly it cannot operate as the legislature intended.

This would, it seems to us, be making a law, and not merely correcting an excess of authority.

Our conclusion is, that the legislature has failed to fix the term of the members of the board of health; that the term of the office is at the pleasure of the governor, and that on the case presented by this record relator is entitled to the office.

For these reasons, the judgment of the superior court is reversed and the cause remanded, with directions to said court to overrule the demurrer, and for further proceedings in accordance with the views herein expressed.

WORKS, J., MCFARLAND, J., and PATERSON, J., concurred.