94 Cal.Rptr.2d 61 (2000)
22 Cal.4th 660
995 P.2d 191
Nelson F. LEONE, Plaintiff and Appellant,
v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.
Shashi D. Ganti, Plaintiff and Appellant,
v.
Medical Board of California, Defendant and Respondent.
No. S065485.
Supreme Court of California.
April 3, 2000.
*62 Andrew R. Willing, Los Angeles, and Albert J. Garcia, Emeryville, for Plaintiff and Appellant Nelson F. Leone.
Catherine I. Hanson, Astrid G. Meghrigian, San Francisco, and Gregory M. Abrams, for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant Nelson F. Leone.
Law Offices of James Jay Seltzer, James Jay Seltzer and Timothy D. Murphy, Emeryville, for Plaintiff and Appellant Shashi D. Ganti.
Daniel E. Lungren and Bill Lockyer, Attorneys General, Nancy Ann Stoner, Cindy M. Lopez and Beth Faber Jacobs, Deputy Attorneys General, for Defendant and Respondent.
KENNARD, J.
The Medical Board of California (MBC), a state administrative agency, has authority to discipline a physician for unprofessional conduct by restricting, suspending, or revoking the physician's license to practice medicine. (Bus. & Prof.Code, § 2227.) A physician whom the MBC has disciplined in this way may obtain judicial review of the MBC's order by commencing an administrative mandate proceeding. (Code Civ. Proc., § 1094.5.) The superior court has original jurisdiction of these administrative mandate proceedings. (Cal. Const., art. VI, § 10.) For this limited category of actions, the Legislature has provided that the Court of Appeal shall review the superior court's decision, not by direct appeal, but "pursuant to a petition *63 for an extraordinary writ." (Bus. & Prof.Code, § 2337; hereafter section 2337.)
We granted review in this case to decide whether section 2337  making a writ petition the method for obtaining appellate review of superior court decisions in these physician licensing matters  violates the clause of the California Constitution stating that, except when a judgment of death has been pronounced, "courts of appeal have appellate jurisdiction when superior courts have original jurisdiction...." (Cal. Const., art. VI, § 11.) Consistent with our resolution of a similar question in Powers v. City of Richmond (1995) 10 Cal.4th 85, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (hereafter Powers), we hold that section 2337 does not violate this appellate jurisdiction clause of the California Constitution.

I
The MBC's Division of Medical Quality separately charged Dr. Nelson F. Leone, a psychiatrist, and Dr. Shashi D. Ganti, an ophthalmologist, with professional misconduct. For each physician, a hearing before an administrative law judge resulted in a recommendation of license revocation. The MBC adopted each of these recommendations and ordered the physicians' licenses revoked. Each physician sought and obtained judicial review of the MBC's adverse decision by petitioning the superior court for a writ of administrative mandate. In each of these judicial proceedings, the superior court upheld the license revocation.
Notwithstanding section 2337, which makes an extraordinary writ petition the exclusive method for obtaining appellate review of a superior court decision in a physician license revocation matter, Drs. Leone and Ganti each filed a notice of appeal. Relying on section 2337, the MBC moved in the Court of Appeal to dismiss both appeals. For the purpose of ruling on these motions, the Court of Appeal consolidated the two appeals. It then heard oral argument and issued a single opinion in which it denied the MBC's motions to dismiss. The Court of Appeal construed the appellate jurisdiction clause of the California Constitution as granting litigants a constitutional right of appeal, and it held section 2337 unconstitutional because, as the Court of Appeal put it, "the Legislature does not have the power to destroy the right of an appeal that is constitutionally granted."
This court granted the MBC's petition for review, which framed the issues this way:
"1. Does the Legislature have the authority to specify the mode of appellate review of physician discipline without infringing on the `appellate jurisdiction' of the appellate court under article VI, section 11 of the California Constitution?
"2. Is Business and Professions Code section 2337 constitutional under California's Constitution, article VI, section 11, to the extent that it specifies the mode of appellate review of a superior court's decision regarding physician discipline and permits appellate review solely by extraordinary writ?"

II
Plaintiff doctors contend that the California Constitution's appellate jurisdiction clause grants them a right of direct appeal from final judgments in administrative mandate proceedings in which superior courts exercise original jurisdiction. In their view, this constitutional right of appeal necessarily includes the rights to oral argument, a decision on the merits, and a written opinion explaining the basis of the appellate court's decision. Plaintiffs contend that section 2337 violates this constitutional right of appeal because it precludes them from appealing the superior courts' judgments in their administrative mandate actions and because it relegates them to seeking review by an extraordinary writ petition, which a Court of Appeal may deny summarily, without hearing oral argument or issuing a written opinion.
*64 A majority of this court rejected the core of plaintiffs' argument in Powers, supra, 10 Cal.4th 85, 40 Cal.Rptr.2d 839, 893 P.2d 1160, concluding instead that the appellate jurisdiction vested in the Courts of Appeal by article VI, section 11, of the California Constitution encompasses review by extraordinary writ as well as review by direct appeal. (Powers, supra, at pp. 92-93, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.); id. at p. 122, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (cone. opn. of George, J.).) The Court of Appeal in this case failed to recognize that the plurality and concurring opinions in Powers agreed on this crucial point. Although Powers provides controlling authority that makes further analysis unnecessary, we summarize the reasoning of the Powers plurality that supports this conclusion.
When construing a constitution, courts view as the paramount consideration the intent of those who enacted the provision at issue. (Davis v. City of Berkeley (1990) 51 Cal.3d 227, 234, 272 Cal.Rptr. 139, 794 P.2d 897.) To determine that intent, courts look first to the language of the constitutional text, giving the words their ordinary meaning. (Ibid.; see also Bowens v. Superior Court (1991) 1 Cal.4th 36, 48, 2 Cal.Rptr.2d 376, 820 P.2d 600; Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.)
The constitutional text at issue here is this:
"The Supreme Court has appellate jurisdiction when judgment of death has been pronounced. With that exception courts of appeal have appellate jurisdiction when superior courts have original jurisdiction...." (Cal. Const, art. VI, § 11.)
Nothing in this language conveys an intention to grant litigants a right of direct appeal from judgments in proceedings within the superior courts' original jurisdiction. "Giving the words their ordinary meaning, the provision serves to establish and allocate judicial authority, not to define or guarantee the rights of litigants. Indeed, the provision nowhere mentions direct appeals or a `right of appeal'" (Powers, supra, 10 Cal.4th 85, 91, 40 Cal. Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.).)
In particular, the reference to "appellate jurisdiction" does not imply a right of litigants to bring direct appeals. A legal dictionary defines "appellate" as "[p]ertaining to or having cognizance of appeals and other proceedings for the judicial review of adjudications." (Black's Law Diet. (6th ed.1990) p. 97, col. 2, italics added.) The same dictionary defines "appellate jurisdiction" as "[t]he power vested in an appellate court to review and revise the judicial action of an inferior court" and as "the power of review and determination on appeal, writ of error, certiorari, or other similar process." (Id. at p. 98, col. 1, italics added.)
The United States Supreme Court has declared that the "essential criterion of appellate jurisdiction" is "that it revises and corrects the proceedings in a cause already instituted, and does not create that cause." (Marbury v. Madison (1803) 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60, 73.) Applying this definition, the high court has concluded that a court exercises appellate jurisdiction when it reviews a lower court's decision in ruling on a petition for a writ of habeas corpus. (Ex Parte Watkins (1833) 32 U.S. (7 Pet.) 568, 572, 8 L.Ed. 786, 788.) Courts in other states have defined "appellate jurisdiction" similarly. (See Powers, supra, 10 Cal.4th 85, 92-93, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.), and cases cited therein.)
Thus, the ordinary and widely accepted meaning of the term "appellate jurisdiction" is simply the power of a reviewing court to correct error in a trial court proceeding. By common understanding, a reviewing court may exercise this power in the procedural context of a direct appeal or a writ petition.
*65 A review of the process that resulted in adoption of the California Constitution's appellate jurisdiction clause reinforces this construction. The voters enacted the appellate jurisdiction clause in substantially its present form at the November 8, 1966, General Election, when the previous article VI of the California Constitution was repealed and its provisions revised and redistributed. This comprehensive revision of the provisions concerning the judicial branch of state government was largely drafted by the California Constitutional Revision Commission, and a court may consult the commission's official reports to determine the intent and objective of ambiguous provisions. (Mosk v. Superior Court (1979) 25 Cal.3d 474, 495, 159 Cal.Rptr. 494, 601 P.2d 1030.) The records of the commission's official proceedings reveal that its main objective in revising article VI was "to delete provisions which were redundant, obsolete, or unnecessary for inclusion in the Constitution, such as procedural matters which could be prescribed or provided for by statute or court rule." (Mosk v. Superior Court, supra, at p. 496, 159 Cal.Rptr. 494, 601 P.2d 1030.) By removing unnecessary provisions from article VI, and allowing many of those matters to be regulated by statute, the commission's revisions of article VI effectively broadened the scope of the Legislature's control over judicial procedures.
In its report recommending adoption of section 11 of article VI of the California Constitution, the commission gave this explanation: "This section collects those parts of existing Sections 4, 4b, 4e, and 5 that deal with appellate jurisdiction. Some of the existing sections contain detailed references to instances of appellate jurisdiction. The Commission deleted those references as unnecessary in the Constitution except in death penalty cases where, because of the extreme nature of the penalty, jurisdiction was given to the Supreme Court. [¶] The phrase `on questions of law alone,' as a description of appellate jurisdiction in criminal causes when judgment of death has been rendered was deleted as unnecessary since this is the ordinary scope of review in appellate courts." (Cal. Const. Revision Com., Proposed Revision (1966) p. 91.)
In the records of the commission's proceedings and reports bearing on the appellate jurisdiction provision, we find not a single reference to a litigant's right of appeal, nor anything suggesting that the commission intended that the appellate jurisdiction clause would confer on litigants a right to a direct appeal. Nor does the ballot pamphlet for the November 1966 election mention a right of appeal under the state Constitution.
In its decision, the Court of Appeal here relied on statements in certain early court decisions referring to a right of appeal under the state Constitution. (See Byers v. Smith (1935) 4 Cal.2d 209, 213-214, 47 P.2d 705; In re Sutter-Butte By-Pass Assessment (1923) 190 Cal. 532, 536, 213 P. 974; People v. Perry (1889) 79 Cal. 105, 107, 21 P. 423.) For several reasons, this reliance was misplaced. None of these decisions construed the current appellate jurisdiction clause, enacted in November 1966, and none addressed the constitutional validity of a legislative scheme making a writ petition the exclusive mode of appellate review of a superior court proceeding. The courts authoring these decisions appear to have used the term "appeal" to encompass a right to appellate review generally, without distinguishing between review by writ petition and review by direct appeal. Finally, many contemporaneous and later decisions of this court and the Courts of Appeal stated that the right of appeal is entirely statutory and that there is no constitutional right of appeal. (See Powers, supra, 10 Cal.4th 85, 105-108, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.), and cases cited therein.)
Because a reviewing court may exercise appellate jurisdiction  that is, the power to review and correct error in trial court orders and judgments  either by a direct appeal or by an extraordinary writ proceeding, *66 the clause of the state Constitution conferring appellate jurisdiction on the Courts of Appeal "does not necessarily or strongly imply a right of litigants to bring direct appeals" from judgments in civil proceedings within the superior court's original jurisdiction. (Powers, supra, 10 Cal.4th 85, 93, 105-108, 40 Cal. Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.).) Rather, that constitutional provision is properly construed as generally permitting the Legislature to enact laws, such as section 2337, specifying that an extraordinary writ petition shall be the method for obtaining appellate review of a superior court judgment in an administrative mandate proceeding.
The Legislature's authority to specify the mode of appellate review of superior court judgments is subject to an important qualification. Because the appellate jurisdiction clause is a grant of judicial authority, the Legislature may not restrict appellate review in a manner that would "`substantially impair the constitutional powers of the courts, or practically defeat their exercise.'" (In re Jessup (1889) 81 Cal. 408, 470, 22 P. 742, italics omitted, quoting Ex Parte Harker (1875) 49 Cal. 465, 467.) "If it could be demonstrated in a given case, or class of cases, that, for whatever reason, the Courts of Appeal or this court could not effectively exercise the constitutionally granted power of appellate review by an extraordinary writ proceeding, then such a proceeding could not constitutionally be made the exclusive mode of appellate review." (Powers, supra, 10 Cal.4th 85, 110, 40 Cal. Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.).)
Relying on this qualification, plaintiff doctors argue that section 2337 substantially impairs the exercise of appellate jurisdiction because the percentage of extraordinary writ petitions that the Courts of Appeal summarily deny is greater than the percentage of direct appeals in which the Courts of Appeal affirm the superior court's judgment. We find the argument entirely unpersuasive.
Plaintiffs cite no relevant statistics demonstrating that, when a writ petition is the exclusive method of appellate review of a final judgment, the Courts of Appeal summarily deny writ petitions with greater frequency than they affirm judgments on direct appeal in comparable proceedings. This lack of relevant supporting data is by itself sufficient reason to reject this argument. In addition, the argument lacks any coherent logic. We perceive no reason to infer from the frequency of summary denials that extraordinary writ review is not a sufficient or effective appellate remedy in physician discipline proceedings. Section 2337 does not limit the kinds of superior court error that the Court of Appeal may correct, the record that the Court of Appeal may consider, or the time the Court of Appeal may devote to appellate review. Nor does it prevent the Court of Appeal, when a petition appears to have merit, from hearing oral argument or issuing a written opinion. Thus, nothing in section 2337 substantially impairs a Court of Appeal's ability to effectively exercise its power to review and correct error in superior court administrative mandate decisions in physician discipline matters.
Finally, Dr. Leone argues that even if section 2337 does not on its face violate the appellate jurisdiction clause of the California Constitution, Courts of Appeal may not deny extraordinary writ petitions in these physician discipline cases summarily, without an order to show cause or alternative writ, oral argument, and a written opinion. Dr. Leone asserts that a summary writ denial is not an exercise of jurisdiction and thus cannot not satisfy an appellate court's obligation to exercise the appellate jurisdiction with which it is constitutionally vested. This argument also fails.
A reviewing court's obligation to exercise the appellate jurisdiction with which it is vested, once that jurisdiction *67 has been properly invoked, is established and not open to question. (See Colorado River Water Conservation Dist. v. United States (1976) 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483; People v. Jordan (1884) 65 Cal. 644, 646, 4 P. 683.) We do not agree with Dr. Leone, however, that a Court of Appeal fails to exercise its appellate jurisdiction when it summarily denies an extraordinary writ petition that lacks substantive merit or is procedurally defective.
As authority for the proposition that a Court of Appeal fails to exercise jurisdiction when it summarily denies an extraordinary writ petition, Dr. Leone relies on this court's decision in Kowis v. Howard (1992) 3 Cal.4th 888, 12 Cal.Rptr.2d 728, 838 P.2d 250. In that case, we held that a summary denial of a writ petition on a pretrial issue does not establish the law of the case. In the course of explaining that holding, we made this statement, on which Dr. Leone relies: "When the court denies a writ petition without issuing an alternative writ, it does not take jurisdiction over the case; it does not give the legal issue full plenary review." (Id. at p. 897, 12 Cal.Rptr.2d 728, 838 P.2d 250.) The italicized statement was addressed to writ petitions challenging pretrial superior court rulings that could also be reviewed on appeal from the judgment ultimately entered in the action; it was not addressed to situations in which a writ petition was the only authorized mode of appellate review. In the latter situation, an appellate court must judge the petition on its procedural and substantive merits, and a summary denial of the petition is necessarily on the merits. (See Powers, supra, 10 Cal.4th 85, 113-114, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (plur. opn. of Kennard, J.); Dowell v. Superior Court (1956) 47 Cal.2d 483, 486-487, 304 P.2d 1009; May v. Board of Directors (1949) 34 Cal.2d 125, 133-134, 208 P.2d 661.) An appellate court that summarily denies a writ petition for lack of substantive merit or for procedural defect thereby fulfills its duty to exercise the appellate jurisdiction vested in it by the state Constitution's appellate jurisdiction clause.
Plaintiff doctors argue that section 2337 not only violates the appellate jurisdiction clause of the state Constitution, but also denies them due process and equal protection. Because these due process and equal protection claims are outside the issues on which we granted review, and because the Court of Appeal has not yet addressed them, we decline to consider them at this time. The Court of Appeal will address these issues on remand.

III
In section 2337, the Legislature has determined that for superior court decisions in certain physician licensing matters, the mode of appellate review shall be an extraordinary writ proceeding rather than direct appeal. To determine whether, as plaintiff doctors contend, the appellate jurisdiction clause of the state Constitution forbids this legislative choice, we have examined the text and history of this constitutional provision. We conclude that the appellate jurisdiction clause does not require the Legislature to provide for direct appeals in all cases within the original jurisdiction of the superior courts; that it permits some variation in and experimentation with the procedures for appellate review of civil actions brought in the superior courts, provided always that the constitutional powers of the courts are not thereby impaired; and that in particular it does not guarantee a physician a right to a direct appeal from a superior court administrative mandate judgment upholding the MBC's revocation of the physician's license to practice medicine.
The judgment of the Court of Appeal denying the MBC's motions to dismiss is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.
BAXTER, J., WERDEGAR, J., and CHIN, J., concur.
*68 Concurring opinion by GEORGE, C.J.
I concur in the holding of the majority that Business and Professions Code section 2337 (section 2337) does not violate article VI, section 11, of the California Constitution. Appellate review of superior court judgments entered upon review of administrative orders revoking, suspending, or restricting a physician's license to practice medicine may be limited to review by petition for extraordinary writ without violating the appellate jurisdiction clause of the California Constitution.
I would analyze the issue, however, in the manner explained in my concurring opinion in Powers v. City of Richmond (1995) 10 Cal.4th 85, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (Powers). There I cautioned against any holding that would permit the Legislature to undertake wholesale replacement of direct appeal with review by extraordinary writ (id. at pp. 116, 124, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (cone, opn. of George, J.)), thereby "restructuring], in a fundamental manner, the operation of the state's appellate process." (Id. at p. 117, 40 Cal.Rptr.2d 839, 893 P.2d 1160.) Focusing upon the authority of the appellate courts, the concurring opinion suggested that legislation might violate article VI, section 11, of the California Constitution if it transformed the Court of Appeal "from an appellate tribunal whose duties generally involve the resolution of cases in which litigants have a direct appeal `as a matter of right'  and in which most decisions must be rendered `in writing with reasons stated' [citation]  into an appellate court whose jurisdiction consists entirely of writ review and as to which the court has no obligation to resolve any of the cases before it by a written decision setting forth the reasons for its ruling." (Powers, supra, 10 Cal.4th at p. 116, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (cone. opn. of George, J.), italics in original.)
In addition, the concurring opinion suggested that in some instances, from the perspective of the parties to an action, "the nature or subject matter" under review or "the nature of the particular rights or interests at stake" might signify that "adequate appellate review" could be provided "only by direct appeal, and not by extraordinary writ." (Powers, supra, 10 Cal.4th at p. 121, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (cone. opn. of George, J.), italics omitted.) The concurring opinion also suggested that the wholesale elimination of direct review from entire classes of cases could implicate not only the authority of the appellate courts, but also the rights of the parties. (Id. at p. 124, 40 Cal.Rptr.2d 839, 893 P.2d 1160.)
I agree with the majority in the present case that there is no basis for concluding that the judicial power of the appellate courts is impaired when review of judgments in administrative mandate actions in cases of physician discipline is limited to extraordinary writ. This restriction affects only a very narrow class of cases, and the essential function of the reviewing court is not threatened. There is no claim that the instances in which the Legislature has provided for writ review of lower court orders and judgments are so numerous that cumulatively the appellate process has been transformed to an extent that the exercise of the power of the appellate courts has been impaired. Further, the judicial power of the appellate courts is exercised effectively when review is sought by extraordinary writ. (See Powers, supra, 10 Cal.4th at pp. 113-114, 40 Cal. Rptr.2d 839, 893 P.2d 1160 (lead opn. of Kennard, J.).) Indeed, the provision limiting plaintiffs to writ review does not limit the record that the appellate court may consider. The administrative proceeding is recorded (Gov.Code, § 11512, subd. (d)), and this record generally is submitted to the superior court with a petition for administrative mandate (Code Civ. Proc., § 1094.5, subd. (a); Alford v. Pierno (1972) 27 Cal.App.3d 682, 691, 104 Cal.Rptr. 110) and normally also would be presented to the Court of Appeal. (See Sherwood v. Superior Court (1979) 24 Cal.3d 183, 186-187, *69 154 Cal.Rptr. 917, 593 P.2d 862.) This provision does not limit the time the Court of Appeal may choose to devote to the evaluation of the writ petition. Further, in any case in which the Court of Appeal's assessment of the petition leads it to conclude that the petition may have merit, the appellate court may issue an alternative writ and obtain additional briefing and oral argument. Thus, from the point of view of the Court of Appeal, there is no indication that writ review under section 2237 would prevent that court from exercising its appellate power effectively.
With respect to the additional concern noted in the concurring opinion in Powers  the rights of the litigants  section 2337 is within the constitutional latitude recognized by that opinion in permitting legislative innovation, since the statutory provisions are "compatible with the particular issue or ruling subject to review and ... serve to promote a fair and efficient judicial system." (Powers, supra, 10 Cal.4th at p. 123, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (cone. opn. of George, J.).) The restriction on appellate review serves a significant public interest in the speedy removal of incompetent physicians from the practice of medicine. (See Kees v. Medical Board (1992) 7 Cal.App.4th 1801, 1813, 10 Cal.Rptr.2d 112 [government has a pressing need to protect the public from the risk of harm presented by physicians who cannot practice medicine safely].) Moreover, the statutory procedure for reviewing an administrative decision revoking, suspending, or modifying a physician's license to practice medicine includes what is essentially the equivalent of a direct appeal  the physician is afforded the right to a full and complete hearing at the administrative level, and then has the right to obtain review of the administrative decision through administrative mandate in the superior court.
Plaintiffs, relying upon language in the concurring opinion in Powers, supra, 10 Cal.4th at page 121, 40 Cal.Rptr.2d 839, 893 P.2d 1160, contend that with respect to both "the nature of the subject matter" and "the nature of the particular rights at stake," section 2337 is distinguishable from the California Public Records Act (Gov. Code, § 6250 et seq.) provision at issue in Powers, and that in light of these distinctions it is appropriate to conclude that adequate appellate review may be provided only by direct appeal and not by extraordinary writ. It is true, as plaintiffs maintain, that the right to practice their profession is a vested right (see Unterthiner v. Desert Hospital Dist. (1983) 33 Cal.3d 285, 297, 188 Cal.Rptr. 590, 656 P.2d 554), the deprivation of which has great significance to the affected individual. It is also true, as plaintiffs contend, that the proceedings resulting in a disciplinary sanction in many instances may be significantly more protracted, and more factually and legally complex, than those presented in a typical California Public Records Act controversy. And it is also true that, unlike the California Public Records Act provisions at issue in Powers, section 2337  though similarly intended to speed the resolution of litigation through the substitution of writ review for direct appeal  was not enacted to promote the interests of the affected parties, in this instance, physicians.
Nonetheless, certain factors weigh heavily against plaintiffs' claim that extraordinary writ review in the Court of Appeal does not afford adequate appellate review in the cases to which section 2337 applies. First, although plaintiffs undoubtedly possess a very significant interest in continuing to practice their profession, this interest properly is subject to legislative control. As we have observed, "`[t]he general right to engage in a trade, profession or business is subject to the power inherent in the state to make necessary rules and regulations respecting the use and enjoyment of property necessary for the preservation of the public health, morals, comfort, order and safety.... [Citation.] No person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject *70 to legislative control under the police powers.'" (Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 790, 72 Cal.Rptr.2d 624, 952 P.2d 641.)
Moreover, in the California Public Records Act action at issue in Powers, the superior court proceeding that was subject to review by extraordinary writ was the initial and only proceeding to address the litigants' California Public Records Act claim. By contrast, the proceedings to which section 2337 applies are administrative mandate proceedings, in which, as noted, the superior court itself essentially provides a direct appeal from extensive quasi-judicial administrative proceedings. In a manner consistent with their significant interest in continuing to practice their profession, physicians are afforded a panoply of procedural safeguards at the administrative level, and the hearing before the administrative law judge is in many respects comparable to an initial trial before a superior court in an ordinary civil action. When a physician challenges a decision of the administrative law judge that has been adopted by the medical board, the parties may file the entire administrative record with the superior court (Code Civ. Proc., § 1094.5, subd. (a)), and that court determines whether the administrative body "has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) If it is claimed that the administrative findings are not supported by the evidence, the court exercises its independent judgment. (Code Civ. Proc., § 1094.5, subd. (c); Yellen v. Board of Medical Quality Assurance (1985) 174 Cal.App.3d 1040, 1057-1058, 220 Cal.Rptr. 426.) In addition, the parties are entitled to a written decision upon request. (Code Civ. Proc., § 632.)
It is evident, accordingly, that the superior court entertains what' is closely comparable to a direct appeal from the administrative decision. In this setting, the further appellate review that the physician may seek in the Court of Appeal provides a second check on any possible error. Accordingly, because the superior court already will have reviewed the administrative record in the manner described, the distinctions drawn by plaintiffs between California Public Records Act proceedings and the proceedings to which section 2337 applies do not demonstrate that limiting appellate review in the present context to extraordinary writ review imposes any greater intrusion on a party's interests in adequate appellate review than the procedures applicable in the California Public Records Act context.
In light of the extensive protections afforded physicians at the administrative level and, most particularly, at the superior court level, and considering the important public interest in imposing timely discipline upon physicians, I believe that exclusive review of a superior court judgment in an administrative mandate proceeding by extraordinary writ in these circumstances is "compatible with the particular issue or ruling subject to review and ..., at the same time, serve[s] to promote a fair and efficient judicial system." (Powers, supra, 10 Cal.4th at p. 123, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (cone opn. of George, J.).)
Having expressed these views, in future cases I shall be bound by the broader rule established by the majority in the present case.
Dissenting Opinion by MOSK, J.
I joined the dissent in Powers v. City of Richmond (1995) 10 Cal.4th 85, 124, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (Powers), which concluded, after extensive historical review, that article VI, section 11 of the California Constitution was intended to give litigants who had their cause adjudicated in superior court a right of direct appeal that could not be supplanted by discretionary writ review. The majority today formulate a position to which only three justices on the Powers court assented  that the Legislature has the virtually *71 unlimited authority to substitute writ proceedings for appeal. I cannot agree.
The differences between review by writ and by appeal are not merely formal or theoretical. Despite the majority's clarification that when a writ is the only means of appellate review, denial of the writ must necessarily be on the merits (maj. opn., ante, 94 Cal.Rptr.2d at p. 67, 995 P.2d at p. 197), it can hardly be doubted that writ review affords fewer procedural protections. This is so because writ review lacks those basic components of ordinary appellate review  oral argument and a written opinion  that ensure the merits of an appeal will be fairly considered. "Oral argument provides the only opportunity for a dialogue between the litigant and the bench. As a result, `it promotes understanding in ways that cannot be matched by written communication.' [Citation.] For example, in complex cases, oral argument `provides a fluid and rapidly moving method of getting at essential issues.' [Citation.] In the words of one judge, `"Mistakes, errors, fallacies and flaws elude us in spite of ourselves unless the case is pounded and hammered at the Bar."' [Citations.] [¶] No proof of the value of oral argument is more compelling, however, `than the fact that many judges find that the opportunity for a personal exchange with counsel makes a difference in result.' [Citation.] This aspect of oral argument  the chance to make a difference in result  is extremely valuable to litigants." (Moles v. Regents of University of California (1982) 32 Cal.3d 867, 872, 187 Cal.Rptr. 557, 654 P.2d 740.) We know too, from personal experience, that when a reviewing court must account for its conclusions in a written opinion, even if that opinion is not published in the official records, there is a greater likelihood that it will carefully analyze the merits. For reasons fully articulated by the dissent in Powers, I continue to be persuaded that a right of direct appeal  including oral argument and a written opinion  is what the drafters of California Constitution article VI, section 11 and its predecessor sections had in mind by "appellate jurisdiction."
Unlike the lead opinion in Powers, and the majority today, the concurring opinion in Powers proposed a narrow holding. It focused primarily on the statute before it, the California Public Records Act (Gov. Code, § 6250 et seq.). It concluded that requiring appellate review by extraordinary writ in such a case did not violate article VI, section 11 of the California Constitution, in part because the Legislature "determined that appellate review by extraordinary writ, rather than by direct appeal, would better protect the rights afforded by the Public Records Act." (Powers, supra, 10 Cal.4th 85, 123, 40 Cal. Rptr.2d 839, 893 P.2d 1160 (conc. opn. of George, J.).) Implicit in this position is the assumption that the Legislature may substitute writ review for that of direct appeal if such substitution advances an important legislative objective. But assuming arguendo that this position is correct, and that rights under the California Public Records Act were indeed best protected by resort to an expeditious writ, in the present case I find that no such legislative objective is advanced. It is not claimed that review by extraordinary writ under Business and Professions Code section 2337 will better protect the right of physicians to practice their profession. On the contrary, the substitution of writ review for direct appeal is inconsistent with the heightened constitutional protections afforded someone who is in danger of losing a vested right to practice his or her profession. (See Unterthiner v. Desert Hospital Dist. (1983) 33 Cal.3d 285, 297, 188 Cal.Rptr. 590, 656 P.2d 554.)
The concurring opinion in the present case would justify the restriction on appellate review in part by the "significant public interest in the speedy removal of incompetent physicians from the practice of medicine." (Conc. opn. of George, C.J., ante, 94 Cal.Rptr.2d at p. 69, 995 P.2d at p. 199.) But the requirement of writ review does not substantially advance this interest. Once the Medical Board of California *72 has suspended or revoked a physician's license, a physician can only obtain a stay of the order if it is granted by the superior court to which he or she has applied for a writ of mandate. (Code Civ. Proc., § 1094.5, subd. (h)(1).) A stay may be granted only if "the court is satisfied that the public interest will not suffer and that the [licensing] agency is unlikely to prevail ultimately on the merits" (ibid.), which means that the court must convince itself that the physician is likely to prevail on the merits (Board of Medical Quality Assurance v. Superior Court (1980) 114 Cal. App.3d 272, 276, 170 Cal.Rptr. 468). Thus, the Medical Board already has the power to timely remove from practice incompetent or unscrupulous physicians, and further restriction on the ability to grant a stay may be legislated without the need to eliminate a right of appeal.
In short, the majority and concurring opinions in this case do not merely follow Powers, but significantly broaden it by expanding the class of cases in which the Legislature may deny the constitutional right of appeal. I cannot join them in that enterprise.
Dissenting Opinion by BROWN, J.
"The bald truth is this, isn't it, that the power to regulate jurisdiction is actually a power to regulate rights  rights to judicial process ... and substantive rights generally?" (Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic (1953) 66 Harv. L.Rev. 1362, 1371.) Henry Hart was, of course, questioning the power of Congress to restrict the jurisdiction of the federal courts in his justly famous Dialogue of almost half a century ago. Yet the principle enunciated by Professor Hart applies with even greater force to this case.
Dissenting in the Powers case (Powers v. City of Richmond (1995) 10 Cal.4th 85, 125, 40 Cal.Rptr.2d 839, 893 P.2d 1160 (Powers)), Chief Justice Lucas gave an exhaustive account of the historical materials bearing on the question of the framers' intent in adopting our constitutional "right of appeal" provision. As that opinion compellingly demonstrates, what the framers of now article VI, section 11 of the California Constitution (hereafter article VI, section 11) intended to secure for the citizens of California was a constitutional right of direct appeal to a reviewing court, a right that included oral argument and an opinion in writing on the merits of the case. (10 Cal.4th at p. 141, 40 Cal.Rptr.2d 839, 893 P.2d 1160 [quoting Delegate Wilson at the 1879 convention that "`[t]he importance of requiring the Court to give written opinions cannot be overrated.... It tends to purity and honesty in the administration of justice.' ([2 Willis & Stockton, Debates and Proceedings, Cal. Constitutional Convention (1878-1879) ] at p. 951, col. 1."].) Rather than confer on the Legislature the power to make exceptions to appellate jurisdiction  not just the federal model but the dominant state model of the day  the framers of the 1849 and 1879 California provisions instead expressly described the jurisdiction conferred on our appellate courts, following the example set by Louisiana. (Powers, supra, at pp. 134-137, 40 Cal.Rptr.2d 839, 893 P.2d 1160.)
Unfortunately, a plurality of the court in Powers rejected that view of the meaning of article VI, section 11a rejection today's majority affirms. Not only does that holding mark an epochal change in the understanding of the appellate rights of California litigants, in effect, it threatens to overturn the conception of a constitutionally rooted, truly independent judiciary. From now on, the sole limitation on the Legislature's otherwise plenary power to manipulate the jurisdiction of California's appellate courts is the notion that such statutory enactments may not "`"substantially impair the constitutional powers of the courts, or practically defeat their exercise."'" (Maj. opn., ante, 94 Cal. Rptr.2d at p. 66, 995 P.2d at p. 196, quoting In re Jessup (1889) 81 Cal. 408, 470, 22 P. 742.)
*73 The concurring opinion advances a similar but more elaborated standard to protect the appellate courts from legislative overreaching: legislation cannot constitutionally "transform[ ] the Court of Appeal `from an appellate tribunal whose duties generally involve the resolution of cases in which litigants have a direct appeal "as a matter of right" ... into an appellate court whose jurisdiction consists entirely of writ review and as to which the court has no obligation to resolve any of the cases before it by a written decision setting forth the reasons for its ruling.'" (Conc. opn. of George, C.J., ante, 94 Cal.Rptr.2d at p. 68, 995 P.2d at p. 198, quoting Powers, supra, 10 Cal.4th at p. 116, 40 Cal.Rptr.2d 839, 893 P.2d 1160, italics omitted.) Would it were so.
The tripartite structure of government and the separation of powers doctrine that underlies it are not ends in themselves; the issue is not one of governmental "turf." The structural divisions of the Constitution are intended to promote the chief aim of our government  individual liberty. (See Miller, Liberty and Constitutional Architecture: The Rights-Structure Paradigm (1993) 16 Harv. J.L. & Pub. Pol'y 87; Brown, Separated Powers and Ordered Liberty (1991) 139 U.Pa. L.Rev. 1513.) It is that concern  the potential for the impairment of individual liberty through the impairment of the structural powers of the judiciary  that is at the root of my disagreement with the majority in this case. The fear of an insensible, aggrandizing "tyranny" that underlies the structural division of government is timeless; as real today as it was in 1879, in 1849, and in 1776. And, "[c]entral to [the concept of separation of powers] are three ... insights: (1) the very fact of the concentration of political power in the hands of one governmental organ is unacceptable, even absent a showing of misuse of that power; (2) it will, as a practical matter, be all but impossible to determine when the level of the concentration of political power has reached the danger point; and (3) the point at which such an unacceptable concentration is actually reached is too late for the situation to be remedied." (Redish & Cisar, "If Angels Were to Govern": The Need for Pragmatic Formalism in Separation of Powers Theory (1991) 41 Duke L.J. 449, 476, fn. omitted.)
I agree with Edmund Burke that the first virtue of politics is prudence. (See Burke, The Philosophy of Edmund Burke, Prudence as a Political Virtue (1960) p. 38; id. at p. 41 ["Prudence is not only the first in rank of the virtues political and moral, but she is the director, the regulator, the standard of them all."].) The appetite for power by the departments of government is, as Madison wrote, "of an encroaching nature." (Madison, The Federalist No. 48 (Rossiter ed.1961) p. 308.) Its accretion leads to even greater accretion. Short of a coup d'etat, legislative aggrandizement need not  indeed, likely will not  assume a dramatic form. More probably, as in this case, it appears in the form of legislators "eagerly bent on some favorite object, and breaking through the restraints of the Constitution in pursuit of it...." (Madison, The Federalist No. 50, supra, at p. 318.) And it is for that very reason, as Thomas Jefferson wrote, that "[t]he time to guard against ... tyranny, is before [it] shall have gotten hold on us." (Jefferson, Notes on the State of Virginia (Peden ed.1982) p. 121.) It is not the last invasive stroke on the judiciary's constitutional prerogatives that should mobilize resistance, but the first. This truism of politics is the reason the limitations on legislative power endorsed in the majority and concurring opinions will protect neither the courts nor the people of California. Or, put another way, would protect them only if, in Madison's striking phrase, "angels were to govern." (Madison, The Federalist No. 51, supra, at p. 322.)
In my view, where the Legislature has asserted control over the right of appeal a subject central to the judicial function a case-by-case inquiry into the likelihood of adverse effects in the wake of a separation *74 of powers breach is ill-conceived. It is ill-conceived for the simple reason that no effective method exists of making that inquiry until it is too late to avoid the danger it represents. Indeed, for the second time in as many months, the majority continues to validate such incursions seriatim. (See In re Rose (2000) 22 Cal.4th 430, 466, 93 Cal.Rptr.2d 298, 993 P.2d 956 (dis. opn. of Brown, J.).) The idea that the court can monitor legislative inroads into our jurisdiction, calling a halt to the invasion when we have determined that it has gone "too far," sacrifices the impairment of individual liberties to a kind of interbranch "comity." It is for that very practical reason the separation of powers doctrine has to operate prophylactically.
Two additional considerations fuel my concern with today's result. The majority expressly affirms the power of a reviewing court to summarily deny a disciplined physician's writ petition  the postcard denial sent without oral argument or an opinion "in writing with reasons stated." (See Cal. Const., art. VI, § 14.) Imposing upon the Courts of Appeal the obligation to issue alternative writs as a matter of course in cases falling within Business and Professions Code section 2337 (hereafter section 2337) would go far to mitigate the unhappy potential of today's ruling. As it stands, however, today's majority expressly authorizes the Court of Appeal to dismiss summarily writ petitions falling within section 2337. (See maj. opn., ante, 94 Cal.Rptr.2d at p. 67, 995 P.2d at p. 197 ["We do not agree ... that a Court of Appeal fails to exercise its appellate jurisdiction when it summarily denies an extraordinary writ petition that lacks substantive merit or is procedurally defective."].) In my view, the summary denial of writ relief by the Court of Appeal denies a benefit the Constitution itself confers.
My concern is only compounded by looking at the alternatives available to the Legislature, alternatives that pose no risk to the constitutional powers of the judiciary and achieve the identical public end sought by section 2337. As Justice Mosk points out in his dissenting opinion, the simplest and most expeditious way to secure the ends sought by the Legislature is to declare that no court shall issue a stay of an administrative order revoking a medical license pending appellate review. (See dis. opn. of Mosk, J., ante, 94 Cal.Rptr.2d at p. 71, 995 P.2d at p. 201.) Indeed, in physician misconduct cases decided under the current regime, a stay of license revocation can be issued by the Courts of Appeal only under narrowly prescribed circumstances. (See Code Civ. Proc., § 1094.5, subd. (h)(1).) Thus, in most cases, the public is fully protected against malpracticing physicians pending resolution of their appeals. The expedition promised by section 2337 is not only unnecessary, but comes at a cost in terms of constitutional structure. Last, of course, one justifiably wonders whether the promised expedition gained by eliminating the time consumed by direct appeals of disciplined physicians seeking judicial review is really any more than the time required for meaningful judicial review in a writ proceeding, including issuance of an alternative writ, additional briefing, and oral argument. (Cf. Lewis v. Superior Court (1999) 19 Cal.4th 1232, 82 Cal.Rptr.2d 85, 970 P.2d 872.) The necessary time expenditure can hardly be less than an expedited direct appeal.

CONCLUSION
The limits imposed by the Constitution  always permeable  now become wholly illusory. A rule that prohibits substantial impairment of the constitutional powers of the court (maj. opn., ante, 94 Cal.Rptr.2d at p. 66, 995 P.2d at p. 196) is meaningless when the constitutional provisions are emptied of substantive content. The concurring opinion asserts that legislation *75 cannot constitutionally "transform[] the Court of Appeal ... `into an appellate court whose jurisdiction consists entirely ]of writ review....'" (Conc. opn. of George, C.J., ante, 94 Cal.Rptr.2d at p. 68, 995 P.2d at p. 198, italics omitted.) The Legislature may perhaps be forgiven if its derisive response is: "Sez who?"