IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason D. Evans,                           :
                         Petitioner        :
                                           :
        v.                                 :
                                           :
Pennsylvania Parole Board,                 :    No. 549 C.D. 2023
                         Respondent        :    Submitted: July 5, 2024

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: September 6, 2024


        Petitioner Jason D. Evans (Evans) petitions for review from the April
28, 2023, order of the Pennsylvania Parole Board (Board).  The Board upheld its
initial April 28, 2022, recalculation of Evans's maximum sentence date, which was
based on his conviction as a parole violator, from his original maximum sentence
date of November 13, 2024, to December 17, 2026.  Upon review, we affirm.


                **I.  Factual and Procedural Background**

        In November 2014, after a guilty plea to a charge of persons not to
possess firearms, Evans was sentenced to 5-10 years' incarceration with a minimum
release date of November 13, 2019, and a maximum release date of November 13,
2024.  Certified Record (C.R.) at 5-7.[1]  He was released from the State Correctional
Institution (SCI)-Albion on parole on his minimum date of November 13, 2019.  *Id.*

_____
        [1] Citations to Certified Record are based on electronic pagination.

at 8-12. On December 1, 2020, while he was on parole, a federal grand jury indicted him on federal drug trafficking charges; on December 10, 2020, he was arrested and charged with those offenses. *Id*. at 18, 84-85. Subsequently, he was also charged with federal firearms offenses. *Id*. at 18, 20 & 99. On December 10, 2020, the Board issued a parole violation detainer for Evans, who was being held at the Allegheny County jail. *Id*. at 13-14. He waived a scheduled detention hearing in federal court on December 14, 2020, and on January 6, 2021, the Board issued a notice to detain him pending disposition of his federal charges. *Id*. at 14 & 86-87. On July 23, 2021, He pleaded guilty to and was convicted of the federal drug trafficking and firearms charges that he committed while he was on parole. *Id*. at 39-42.

A revocation hearing was scheduled for September 9, 2021, at the Butler County jail where Evans was being held on the federal charges, and on September 7, 2021, he waived his right in writing to a panel hearing and agreed that the matter could be held before a hearing officer. C.R. at 26. However, the hearing was continued because the United States Marshals Service (USMS) must approve federal inmates' release for such hearings and clearance had not been obtained in time. *Id*. at 27.

On December 7, 2021, a federal district judge issued an order reflecting that the USMS had cleared Evans for temporary release to the Department of Corrections (DOC) for his parole revocation hearing (to be rescheduled). C.R. at 28. On December 17, 2021, the same judge issued a notice stating that an unsecured $10,000 appearance bond had been entered for him to appear at his revocation hearing once it was rescheduled. *Id*. at 74-75 & 88. The hearing was held at SCI-Albion on March 22, 2022, with counsel from the Erie County Public Defender's Office (Erie PD) representing Evans. *Id*. at 28-32. An agent for the Board testified

2

and produced documentation reflecting Evans's July 2021 guilty plea and conviction on the federal drug trafficking and firearms charges committed while he was on parole, with sentencing on those charges scheduled for April 2022. *Id*. at 39-42.

Evans, speaking for himself, questioned whether the March 22, 2022, hearing was timely based on his understanding of Section 71.4 of the Board's regulations, 37 Pa. Code § 71.4, which states that parole revocation hearings must be held within 120 days of the date on which the parolee is convicted of the offense that triggers revocation or is within custody of the DOC. C.R. at 45. The Board agent responded that the Board verified Evans's July 23, 2021, federal convictions on July 28, 2021, and his first hearing was scheduled for September 9, 2021, which was within 120 days. *Id*. at 46. The agent noted that the timeline reset when that hearing was continued because Evans was still in USMS custody even though he was in a county facility. *Id*. The agent explained that the timeline restarted on December 7, 2021, when the USMS made Evans available for parole revocation proceedings, and the March 22, 2022, hearing was within 120 days of that date. *Id*. The hearing concluded shortly thereafter. *Id*. at 48.

On April 6, 2022, the hearing officer recommended that Evans be recommitted as a convicted parole violator based on his July 2021 federal convictions. C.R. at 71-72. The hearing officer recommended that based on those convictions, Evans be denied credit for time at liberty between his release on parole on November 13, 2019, and his federal arrest on December 10, 2020. *Id*. A Board member approved and signed the hearing officer's recommendation. *Id*.

On April 28, 2022, the Board issued an order recalculating Evans's maximum sentence date. C.R. at 103. His original maximum sentence date was November 13, 2024. *Id*. He was paroled on November 13, 2019, which left 1827

days remaining on his original sentence. *Id.* He received 112 days of credit for back-time served on the Board's detainer. This included the day of his arrest on federal charges (December 10-11, 2020) and the period after his release from federal custody to the DOC between December 17, 2021, and April 7, 2022, when he was returned to federal custody after parole revocation proceedings. *Id.* at 102-04. Subtracting 112 back-time credit days from 1827 total days remaining on his original sentence resulted in 1715 days due to be served on his original sentence. *Id.* at 103. Adding 1715 days from April 7, 2022, resulted in a new maximum sentence date of December 17, 2026. *Id.* The Board agreed with the hearing officer that Evans was not entitled to credit for time at liberty in light of the federal offenses he committed while on parole. *Id.* at 106.

Evans filed a timely administrative remedies form in May of 2022. C.R. at 107. He asserted that the Board wrongly deprived him of a pre-revocation detention hearing to determine whether a *prima facie* case of parole violation existed; that his March 22, 2022, revocation hearing was untimely; and that his back-time credit had been miscalculated. *Id.* at 108-09. On April 28, 2023, the Board issued its decision and order denying Evans's allegations as meritless. *Id.* at 131-33. He filed a timely *pro se* petition for review to this Court along with a request for appointment of counsel, which this Court granted by appointing the Erie PD.

On September 20, 2023, the Erie PD filed an application with this Court to withdraw as counsel and a *Turner* letter[2] stating that Evans's appeal was meritless.

---

[2] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Appointed counsel files such a letter when seeking to withdraw from representation of a parole violator because the violator's case lacks merit, although it may not be "so anemic as to be deemed wholly frivolous." *Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1204 n.2 (Pa. Cmwlth. 2020) (quoting *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007)) (internal quotation marks omitted). Such letters go by many

4

The application included the Erie PD's letter to Evans enclosing a copy of the application and the *Turner* letter and advising him of his right to proceed either *pro se* or with new counsel of his choosing. On September 25, 2023, this Court issued an order stating that the Erie PD's application and *Turner* letter would be considered along with the merits; we added that Evans could obtain substitute counsel at his own expense or submit a *pro se* brief and that the Erie PD was to serve the order on him by October 10, 2023. On October 5, 2023, this Court received the Erie PD's October 2, 2023, certificate of service stating that it served Evans by mail on that date with this Court's September 25, 2023, order. Neither Evans nor the Board subsequently filed a brief with this Court and the matter is now ripe for review.

## II. Erie PD's *Turner* Letter

Before addressing Evans's substantive arguments, we must assess the adequacy of the Erie PD's *Turner* letter. As this Court has explained:

> A *Turner* letter must include an explanation of the nature and extent of counsel's review and list each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless. As long as a *Turner* letter satisfies these basic requirements, we may then review the soundness of a petitioner's request for relief. However, if the letter fails on technical grounds, we must deny the request for leave to withdraw, without delving into the substance of the underlying petition for review, and may direct counsel to file either an amended request for leave to withdraw or a brief on behalf of their client.

names in the Commonwealth, including "no-merit letter," "*Finley* letter," "*Turner* letter," and "*Turner/Finley* letter." *See Anderson*, 237 A.3d at 1204 n.2. If this Court, after its own independent review, agrees with counsel that the petition is meritless, counsel will be permitted to withdraw. *Adams v. Pa. Bd. of Prob. & Parole*, 885 A.2d 1121 (Pa. Cmwlth. 2005).

5

*Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1207 (Pa. Cmwlth. 2020) (internal citations, quotation marks, and original brackets omitted).

The Erie PD's *Turner* letter is sufficient. First, it provides the nature and extent of appointed counsel's review, stating that the Erie PD reviewed the certified record, the documents in the file, all of Evans's correspondence and filings, and the relevant caselaw, statutes, and regulations. *See Turner* Letter at 1. Next, the letter lists each issue raised in Evans's petition for review (which will be discussed *infra*) and explains why those issues are meritless. *See id*. at 4-7. Additionally, the Erie PD served Evans with a copy of the *Turner* letter and application to withdraw and advised him of his right to retain new counsel or proceed *pro se*. *See* Application to Withdraw at 1-3. Because the Erie PD complied with the technical requirements of *Turner*, and because we agree that the appeal is frivolous, as discussed *infra*, we grant the application to withdraw.

## III. Discussion of Substantive Claims

In his petition for review, Evans raises the following issues, reordered for chronological clarity.[3] First, he asserts that the Board violated his due process rights by failing to hold an additional detention hearing to determine whether his federal charges established a *prima facie* parole violation case. Petition for Review at 4. Next, he argues that the Board violated his due process rights because his March 2022 revocation hearing was untimely. *Id*. Lastly, he avers that the Board erred in recalculating his maximum sentence date. *Id*.

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. *Miskovitch v. Pa. Bd. of Prob. & Parole*, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013).

6

## A. Additional Detention Hearing

Section 71.3(9) of the Board's regulations states that if a parolee is taken into custody on new criminal charges, a detention hearing for parole revocation purposes must be held within 30 days. *See* 37 Pa. Code § 71.3(9). Section 71.3(1) and (2) of the regulations set forth conditions under which a detention hearing is not required:

> The following procedures shall be followed if a parolee, not already detained after appropriate hearings for other criminal charges or technical violations, has been charged with a new criminal offense:
>
> > (1) A parolee may be detained on a Board warrant pending disposition of a criminal charge following the occurrence of one of the following:
> >
> > (i) A district justice has conducted a criminal preliminary hearing and concluded that there is a *prima facie* case against the parolee.
> >
> > (ii) The parolee waives a criminal preliminary hearing and is held for court.
> >
> > (iii) The parolee is convicted of a crime at a trial before a judge of the Philadelphia Municipal Court or a district justice.
> >
> > (iv) An examiner conducts a detention hearing.
> >
> > (2) A parolee detained on a Board warrant upon the occurrence of one of the events enumerated in paragraph (1) may be held, without further hearing, pending disposition of the new criminal charge.

37 Pa. Code § 71.3(1), (2). In *Reavis v. Pennsylvania Board of Probation and Parole*, 909 A.2d 28 (Pa. Cmwlth. 2006), this Court recognized that "a parolee who is detained as a convicted parole violator is not constitutionally entitled to a detention hearing" and that "[t]he purpose of the detention hearing is to determine whether there is probable cause to support a charge of parole violation." *Id*. at 35.

In the case of a substantive federal charge, a valid and proper indictment by a grand jury "conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged." *Kaley v. United States*, 571 U.S. 320, 328 (2014). Accordingly, "[o]nce a federal grand jury has indicted a defendant, probable cause is established, and the defendant no longer is entitled to a preliminary hearing." *United States v. Simon*, 510 F. Supp. 232, 235 (E.D. Pa. 1981); *see also* Fed R. Crim. P. 5.1(a)(2) (same). Relatedly, the purpose of a detention hearing in the context of a substantive federal charge is for a judicial officer to determine whether the defendant is likely to flee or harm the public if released prior to trial; the inquiry entails, *inter alia*, the nature and circumstances of the offense charged, including whether it involves narcotics. *United States v. Accetturo*, 783 F.2d 382, 384 (3d Cir. 1986).

Evans asserts that the Board violated his due process rights by failing to hold a detention hearing on his parole violation. Petition for Review at 4. In its April 2023 decision, the Board stated that it relied on Evans's waiver of his federal detention hearing to conclude that a *prima facie* case had been established that the federal drug trafficking charges constituted probable cause that he violated his parole. C.R. at 132.

There is no dispute that a federal grand jury indicted Evans on federal drug trafficking charges in early December 2020. C.R. at 84-85. Additionally, he

8

waived his right to a federal detention hearing. *Id*. at 86. The Board did not hold a detention hearing at any time, either after Evans was arrested and charged with federal drug trafficking offenses in December 2020 or when he was subsequently charged with federal firearms offenses while still in federal custody before pleading guilty to both charges in July 2021.

A defendant's waiver of a federal detention hearing on a substantive federal charge is not among the conditions for negating a Board detention hearing on parole violation as set forth in Section 71.3(1) of the Board's regulations. However, in *Reavis*, this Court recognized that "a parolee who is detained as a convicted parole violator is not constitutionally entitled to a detention hearing" and that "[t]he purpose of the detention hearing is to determine whether there is probable cause to support a charge of parole violation." 909 A.2d at 35.

Given this context, the federal grand jury's December 2020 indictment of Evans on federal drug trafficking charges constituted a finding of probable cause that he did commit those offenses and rendered a federal preliminary hearing on probable cause unnecessary. *Simon*, 510 F. Supp. at 235; *see also Turner* letter at 5. By extension, the federal proceedings also established a *prima facie* case that Evans violated his parole conditions that he comply with all criminal laws, specifically including the unlawful sale of narcotics. C.R. at 11; *Reavis*, 909 A.2d at 35; *see also Turner* letter at 5. Therefore, for the Board to hold an additional detention hearing within 30 days of its December 10, 2020, detainer would be redundant and, pursuant to *Reavis*, not constitutionally necessary. *See Reavis*, 909 A.2d at 35; *see also Turner* letter at 5. Because the Board did not err in declining to hold an additional detention hearing, Evans's first claim is meritless.

## B. Timeliness of Revocation Hearing

Parolees are entitled to "the disposition of their parole violation charges within a reasonable time." *Carr v. Pa. Bd. of Prob. & Parole*, 494 A.2d 1174, 1176-77 (Pa. Cmwlth. 1985) (internal citation omitted). Section 71.4(1) of the Board's regulations applies here and states:

> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> > (i) If a parolee is confined outside the jurisdiction of the [DOC], such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.
> >
> > (ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

37 Pa. Code § 71.4(1). Relevant to this case, this Court analyzed Section 71.4(1) in *Edwards v. Board of Probation and Parole*, 751 A.2d 717, 719 (Pa. Cmwlth. 2000). There, Edwards was convicted of murder and incarcerated in a state correctional facility through his parole in 1988. *Id*. at 718. He was subsequently charged with

federal wire fraud charges and incarcerated in a county jail when, on March 27, 1997, he signed a waiver of his right to a full panel parole revocation hearing based on the initial murder charges. *Id*. He argued that the 120-day clock began on March 27, 1997, but that as of October 1998, a hearing had not yet been held. *Id*.; Board's Br. at 2 (providing additional facts). Discussing Section 71.4(1), this Court stated:

> The above language does not make clear whether subsection (ii) is intended to apply to a prisoner lodged in a county facility by the federal authorities pending his federal trial and sentencing. However, such a prisoner is in federal custody regardless of his physical location. Although on its face § 71.4 appears to address solely the physical place of confinement, it would seem open to serious question whether state regulations can simply "deem" federal prisoners to be within the jurisdiction of state authorities. Moreover, § 71.5 provides that:
>
> > (a) If the parolee is in ... Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth.
>
> To give meaning to both § 71.4 and § 71.5, we must interpret § 71.4(1)(ii) to apply only to state and county prisoners confined in county correctional institutions, not to federal prisoners. As a federal detainee, Edward's waiver of his right to a full-panel hearing did not trigger the 120-day period under § 71.4(1).

*Id*. at 719 (citations omitted).

Evans asserts that the Board violated his due process rights by failing to hold his parole revocation hearing by November 22, 2021, which was 120 days from when he states he first signed a waiver of his right to a panel hearing on August 24, 2021; he asserts, therefore, that the March 22, 2022, hearing was untimely. Petition for Review at 6-7. In its April 2023 decision, the Board stated that Evans

first became available for parole revocation proceedings when he signed a waiver of his right to a panel hearing on September 7, 2021.[4] C.R. at 132. However, he became unavailable on September 9, 2021, when the scheduled hearing was continued because the USMS had not released him from federal custody on his federal charges even though he was incarcerated at the Butler County jail. *Id*. He did not become available again until he was returned from federal custody to SCI-Albion on December 20, 2021. *Id*. At that time, the 120-day clock resumed, and the Board had until April 17, 2022, to hold a hearing. *Id*. As such, the Board concluded, the March 22, 2022, hearing was timely. *Id*.

The facts here are analogous to *Edwards*. Although Evans asserts that he first signed a waiver of his right to a panel hearing on August 24, 2021, the record reflects only that he signed such a waiver on September 7, 2021, as the Board indicated, in anticipation of a hearing scheduled for September 9, 2021. C.R. at 26. At that time, he had pleaded guilty to the federal drug trafficking and firearms charges and was incarcerated on those convictions at the Butler County jail. *See id*. at 27. However, on September 9, 2021, the scheduled hearing had to be continued because the USMS had not cleared him from federal custody to the DOC so that the Board could hold the hearing. *Id*. at 27. Thus, on September 9, 2021, pursuant to *Edwards*, Evans was still in federal custody even though he was physically located in a county jail, and his September 7, 2021, waiver of a panel hearing "did not trigger the 120-day period under [Section] 71.4(1)." 751 A.2d at 719; *see also Turner* letter at 6.

---

[4] Evans attached to his Petition for Review a copy of an inmate rights notification and waiver form signed by himself and a witness on August 24, 2021, and indicating that he waived his right to a panel hearing. Ex. 7 to Petition for Review. This document is not included in the Certified Record. However, as will be discussed *infra*, neither August 24, 2021, nor September 7, 2021, is the controlling date from which the 120-day timeframe began in this matter.

12

Evans was subsequently granted unsecured bail on his federal charges on December 17, 2021, solely for the purpose of parole revocation proceedings, and was returned to DOC custody at SCI-Albion on December 20, 2021. C.R. at 131-32. The Board is correct that the 120-day timeline for it to hold a hearing began on that date as Section 71.4(1)(i) states that when a parolee is in federal custody, even if incarcerated in a county facility, the hearing must be held within 120 days "of the official verification of the return of the parolee to a State correctional facility." 37 Pa. Code § 71.4(1)(i). This gave the Board until April 17, 2022, to hold Evans's hearing and the March 22, 2022, hearing was timely. *See Edwards*, 751 A.2d at 719; *see also Turner* letter at 6. Evans's reliance on Section 71.4(1)(ii) is unavailing because as explained in *Edwards*, that provision applies only to "state and county prisoners confined in county correctional institutions, not to federal prisoners." *Edwards*, 751 A.2d at 719. Because the Board did not hold Evans's hearing in an untimely manner, his second claim is meritless.

### C. Recalculation of Maximum Sentence Date

For purposes of recalculating a convicted parole violator's maximum sentence date, our Supreme Court has held that if a parolee charged with new criminal offenses "is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his original sentence." *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568, 571 (Pa. 1980) (analyzing Section 6138(a)(5.1) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(a)(5.1)). If, however, the parolee "remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time

13

spent in custody shall be credited to his new sentence." *Id*.; *see also Smith v. Pa. Bd. of Prob. & Parole*, 171 A.3d 759, 761 n.7 (Pa. 2017) (reaffirming the "general holding" of *Gaito*).

Evans argues that he should have received back-time credit for the full period between August 24, 2021, when he first signed a waiver of his right to a panel hearing, and December 20, 2021, when he was returned to DOC custody at SCI-Albion.[5] Petition for Review at 8-9. This would result in an additional 118 days of back-time credit and a new maximum sentence date of August 22, 2026, rather than the Board's recalculated date of December 17, 2026. *Id*. The Board explained in its April 2023 decision that Evans could only receive back-time credit on his original sentence for the 112 days that he was held "solely on the Board's detainer" (December 10-11, 2020, and December 17, 2021 through April 7, 2022, when he was returned to federal custody for sentencing on his federal convictions). C.R. at 132-33. As such, the Board did not award him credit for any time when he was detained both on the Board's detainer and by federal authorities for his federal offenses. *See id*.

The record includes the Board's December 10, 2020, detainer for parole revocation proceedings in light of Evans's arrest on federal drug trafficking charges. C.R. at 13. The record also includes Evans's September 7, 2021, signed waiver of his right to a panel hearing. *Id*. at 26. As discussed above, this rendered Evans technically "available" for revocation proceedings. However, he was not solely in custody on the Board's detainer on that date because by that time, he had pleaded

---

[5] As noted above, the certified record includes Evans's September 7, 2021, waiver document but not the August 24, 2021, waiver document that he attached to his Petition for Review to this Court. However, as this section discusses, neither August 24, 2021, nor September 7, 2021, are the controlling dates for recalculation purposes.

guilty to the federal drug trafficking and gun charges and was awaiting sentencing on those convictions in federal custody, albeit in the Butler County jail. *See id*. at 26 & 39-42. This was confirmed on September 9, 2021, when the scheduled parole revocation hearing had to be continued because the USMS had not released him to DOC custody in order for the hearing to proceed. *Id*. at 27.

Evans remained in federal custody until the following events in December 2021. On December 7, 2021, a federal district judge issued an order allowing his temporary release from federal custody to the DOC for parole revocation purposes, after which custody would immediately and automatically revert to the USMS. C.R. at 28. On December 17, 2021, the judge executed an unsecured appearance bond allowing him to be formally transferred to DOC custody. *Id*. at 74-75. When the Board recalculated his maximum sentence date, it indicated that his eligibility for back-time credit began on December 17, 2021, the first day when he was held solely on the Board's detainer even though he was not physically returned from federal custody to SCI-Albion until December 20, 2021. *Id*. at 103 & 131-32.

In light of the foregoing, the Board correctly calculated 112 days of back-time credit, reflecting the time when Evans was in custody solely on the Board's detainer. *See Gaito*, 412 A.2d at 571; *see also Smith*, 171 A.3d at 761 n.7 & *Turner* letter at 7. This included December 10-11, 2020, when the Board first issued its detainer after Evans's arrest on the federal drug trafficking charges, followed by the time between December 17, 2021, when the federal district court issued the bond relinquishing custody to the DOC, and April 7, 2022, when custody reverted to the federal authorities for Evans's sentencing on his federal convictions.

15

Evans's argument that he should have received back-time credit for the period between August 24, 2021, when he first signed a waiver of his right to a panel hearing, and December 20, 2021, when he was returned to DOC custody at SCI-Albion, is unavailing, because the record supports the Board's determination that he was also in federal custody during that time and not being held *solely* on the Board's detainer, as *Gaito* and *Smith* require for back-time credit in this context. Because the Board did not err in determining Evans's eligibility for back-time credit when it recalculated his maximum sentence date, his third claim is meritless.

## IV. Conclusion

Based on the foregoing, the Erie PD's application to withdraw as counsel complies with the technical requirements of *Turner*. Further, based upon an independent record review by this Court, Evans's appeal lacks merit. Accordingly, the Erie PD's application is granted and the Board's order recalculating Evans's maximum sentence date is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason D. Evans,              :
             Petitioner    :
                           :
        v.                :
                           :
Pennsylvania Parole Board,    :    No. 549 C.D. 2023
             Respondent   :

# **O R D E R**

AND NOW, this 6th day of September, 2024, the Erie County Public Defender's application to withdraw as counsel is GRANTED. The April 28, 2023, order of the Pennsylvania Board of Probation and Parole is AFFIRMED.

 

                              _____

                              CHRISTINE FIZZANO CANNON, Judge